LINDER v. HARTWELL R. CO. et al.

(Circuit Court, N. D. Georgia. January 8, 1896.)

1. RAILROAD MORTGAGES—FORECLOSURE—REQUEST OF BONDHOLDERS.

Complainant, a holder of the stock and bonds of the H. R. Co., filed his bill against that company and the R. & D. Ry. Co., alleging that the H. Ry. Co. had been operated by the R. & D. Ry Co., which owned a majority of its stock and more than three-quarters of its bonds; that the earnings of the H. Co. had been misapplied by the officers of the R. & D. Co., and diverted to their own use, to the injury of the minority stockholders and creditors of the H. Co., causing the interest on its bonds to fall largely into arrear, and rendering the company insolvent; that the officers of the R. & D. Co. had refused the minority stockholders and creditors a statement of the earnings of the road and an inspection of its books, and thereupon

complainant, after averring the refusal of the trustees under the mortgage securing the bonds to sue, asked for an accounting from the R. & D. Co., and for foreclosure of the mortgage. *Held*, on demurrer by the R. & D. Co., that complainant would not, under the peculiar circumstances, be debarred from maintaining the suit for foreclosure by a provision of the mortgage requiring a request of one-fourth of the bondholders to authorize a foreclosure, since such a requirement would enable the R. & D. Co., holding more than three-fourths of the bonds, to delay the foreclosure indefinitely.

**2.** SAME—DIVERSION OF EARNINGS—ACCOUNTING.

*Held*, further, that though the mortgagor company could use the income of the mortgaged property until foreclosure, without being called to account, the complainant had a right to require an account from the R. & D. Co. of profits it was alleged to have made by the diversion of the earnings of the H. Co., while in control of that company by its officers.

Erwin, Cobb & Wooley, for plaintiff.
A. G. McCurry, for defendant.

NEWMAN, District Judge. This is a bill filed by T. J. Linder, originally against the Hartwell Railroad Company and the Richmond & Danville Railroad Company, in the superior court of Hart county, and removed by the Richmond & Danville Railroad Company to this court. Recently the Southern Railway Company was made a party defendant, and since the argument the plaintiff has conceded the necessity for making John B. Maxwell, trustee, a party, and an order has been taken to that effect. The case made by Linder's bill is that the Hartwell Railroad Company is a corporation of Georgia organized for the purpose of constructing a railroad from Bowersville to Hartwell, Ga.; that the Richmond & Danville Railroad Company is a foreign corporation of the state of Virginia; that the capital stock of the Hartwell Railroad Company is $21,000, in shares of $100 each, of which Linder owns 5 shares, the Richmond & Danville Railroad Company owns 139 shares, making it a majority stockholder; that the Hartwell Railroad Company, on the 2d of January, 1880, issued its first mortgage bonds in the sum of $20,000, in denomination as follows: 20 of said bonds being for $100 each, and 36 bonds at $500 each, all bearing interest at 10 per cent. per annum from the 1st of September, 1879, and due and payable September 1, 1889. No part of the interest on these bonds was due or payable before the 1st of January, 1884, at which time all accrued interest was to be paid, and the interest thereafter to be paid semi-annually on the 1st of March and September of each year. On said 2d of January, 1880, a mortgage was executed in favor of John B. Maxwell, R. E. Saddler, and John Snow, trustees named therein, on said railroad and appurtenances, to secure the payment of said bonds. Linder is the owner of $3,800 of these bonds, with a large amount of accrued interest; and the remainder were owned by the Richmond & Danville Railroad Company, which, as alleged in the amendment, passed into the hands of the Southern Railway in 1884, after the bonds had matured. The Hartwell Railroad was constructed by a construction company under a contract by which the construction company was to own and operate the road, and receive the profits of the same until January 1, 1884. In the meantime the con-

struction company sold out the balance of its term to the Richmond & Danville Railroad Company, who operated the road from the time of this sale, in 1881, to the 1st day of January, 1884, when the railroad was turned over to the Hartwell Railroad Company. This change was a mere formality, indicated by some entries in books; the road continuing to be operated, as it had been before, by the officers of the Richmond & Danville Railroad Company, as the officers of the Hartwell Railroad Company. The bill charges, further, that the road was operated by the Richmond & Danville Railroad Company, for its benefit, and without regard to the interest of the minority stockholders or the creditors of the road; that the books of the company were kept in Virginia, where they were inaccessible to the minority stockholders and creditors, or, at least, inaccessible without great inconvenience and expense; that the Richmond & Danville Railroad Company has failed and refused to furnish a statement of the gross income, expenses, and net income of the road, and that it has failed to furnish an exemplification from the books showing the accounts of the Hartwell Railroad, and the disposition made of its earnings, and has refused to allow an inspection of the books; that the majority stockholders have fraudulently withdrawn the earnings of the road from the treasurer, and applied them to their own private use, and refuse to account therefor. The bill further alleges that the complainant, not having access to the books of the company, cannot state positively as to amounts, but that since January, 1884, the gross receipts of the Hartwell Railroad have averaged $9,000 per annum, amounting in all to $72,000 at the time the bill was filed; that the legitimate expenses of said road had not exceeded $3,000 per annum, leaving as a net profit $6,000 per annum, or a total of $48,000, or some other large sum, in the hands of the Richmond & Danville Railroad Company; that the effect of this fraudulent conversion of the income of the Hartwell Railroad was to leave it insolvent and unable to pay the demands against it; that R. E. Saddler, one of the trustees, has died since his appointment, and before the filing of this bill; that John Snow refused to act as trustee; and that John B. Maxwell refused to sue. The prayers are for the appointment of a receiver; for an injunction; for a mandamus requiring the Richmond & Danville Railroad Company to turn over certain property (which is described in the bill as having been wrongfully taken by it, and which has not been alluded to because deemed immaterial); for an accounting between the majority stockholders, the Richmond & Danville Railroad Company, the Hartwell Railroad Company, and the plaintiff as to the earnings of the road; for the foreclosure of the mortgage; and for subpœna.

The demurrers are on the grounds—First. That Maxwell, trustee, is not made a party. This has been cured by the amendment referred to. Second. That there is no allegation that the officers of the Hartwell Railroad Company were requested to act and institute this proceeding by Linder before he filed his bill. Third. That the trustee, by the terms of the mortgage, has no right to proceed to foreclose against the mortgagor for default in payment of principal and interest, except upon the request of holders of not less than one-fourth

of the bonds upon which default shall have occurred. Fourth. That Linder, as a bondholder (assuming that, for the reason stated in the second ground, he cannot proceed as a stockholder), has no right, as mortgagee, to the income and profits of the road while it was in the possession of the mortgagor, and before proceedings to foreclose. This states the substance of all the demurrers filed by the Hartwell Railroad Company, the Richmond & Danville Railroad Company, and the Southern Railway Company.

It will be perceived that there are three questions for determination: First. As to the right of Linder, as a stockholder in the Hartwell Railroad Company, to maintain this suit. There is no allegation in the bill of any request made to the officers of the Hartwell Railroad Company to institute this proceeding before Linder commenced it. So that it would be necessary that he should have the right, under the peculiar circumstances of this case, to bring this bill as a stockholder without first making a demand on the officers of the Hartwell Railroad Company to proceed. What would be true as to this, under the facts of this case, it is not necessary to determine, as the plaintiff's counsel have stated in open court that they do not rely upon Linder's rights as a stockholder, but upon his rights as a bondholder.

As to third ground of demurrer, the power given the trustees, by the terms of the mortgage, upon the default in the payment of principal and interest, is to take possession of the mortgaged property, and to sell the same. Even if the trustees had no power to proceed to foreclose the mortgage in court except upon the request of one-fourth of the holders of bonds ordinarily, the situation of the bondholders here, and their relation to each other and to the Hartwell Railroad Company, makes an exceptional case, and justifies this proceeding. The Richmond & Danville Railroad Company owns more than one-fourth of the bonds, and therefore has it in its power, if the request of one-fourth of the bonds is necessary, to delay proceedings indefinitely. It would be remarkable if the Richmond & Danville Railroad Company could do what it attempts by this ground of the demurrer to do,—that is, admit that it has acted wrongfully and fraudulently in this matter, as charged in the bill; that it has not, notwithstanding eight years' default in the payment of interest, and three years' default in the payment of the principal, made any request of the trustees to proceed,—and yet, as it holds three-fourths of the securities of this road, it can stand by and prevent the minority bondholder from obtaining his right, and collecting his long past due debt by foreclosure of the mortgage. It should not be allowed in this way to take advantage of its own wrong, and bring about such a palpable denial of justice, even if the provision of this mortgage requiring the request of one-fourth of the bondholders is applicable to a proceeding to foreclose in court.

The only remaining question for determination (except as to the position of the Southern Railway Company in the matter) is as to the right of Linder to require an accounting of the Richmond & Danville Railroad Company as to the large profits which he alleges were made during the eight years it, by its officers, operated the

Hartwell Railroad. It is said that, prior to the foreclosure of a mortgage, the mortgagor has the right to use the income and profits of the mortgaged property, and that no accounting could be demanded of the mortgagor in this respect. Gilman v. Telegraph Co., 91 U. S. 603. The general doctrine contended for is unquestionably correct, but in this case, according to the allegations of the bill, the Richmond & Danville Railroad Company, owning and controlling majority of stock and bonds, took possession by its officers of the Hartwell Railroad, and operated the same for its own use and benefit, made large profits, and fraudulently appropriated the same to its own use, without regard to the interests of the minority stockholders and bondholders. It is not the case of a mortgagor retaining the use and income of a road, but it is the case of a third party having in his possession large earnings and profits derived from the mortgaged property, and which have been diverted from the proper channel, and fraudulently appropriated to its own private use. The allegation is that the effect of this conduct on the part of the Richmond & Danville Railroad Company has been to render the Hartwell Railroad Company insolvent and unable to pay its debts. Conceding this and the other facts, as the demurrer does, to be true, the Hartwell Railroad, when sold, will not pay its bonds and interest; and here is a large fund derived from the operation of the road, and which legitimately belongs to the Hartwell Railroad Company, which the Richmond & Danville Railroad Company fraudulently withholds, and for which it refuses to account. Why may not a creditor of the Hartwell Railroad Company, and especially one having a lien on the property from which the fund was derived, follow this fund, and have it appropriated to the payment of his debt? The right to do so seems to be clear.

As to the attitude of the Southern Railway Company in this litigation, it took these bonds from the Richmond & Danville Railroad Company, after maturity, and while this proceeding was pending, claiming that they were subject to certain credits by reason of the amounts improperly withheld from the Hartwell Railroad Company. So far as the facts are now disclosed, it must stand in the shoes of the Richmond & Danville Railroad Company.

The demurrers will all be overruled.