DAVIS v. VIRGINIA RY. & POWER CO. et al.

BOWLING GREEN TRUST CO. v. VIRGINIA PASSENGER & POWER CO. et al.

(Circuit Court of Appeals, Fourth Circuit. November 4, 1915. On Rehearing, December 13, 1915.)

No. 1366.

1. COURTS ☞352—CONTINUANCE—EFFECT OF END OF TERM AFTER HEARING AND BEFORE DECREE.

New equity rule 57 (198 Fed. xxxiv, 115 C. C. A. xxxiv), providing that after a cause has been placed on the trial calendar it shall not be continued over the term, save in exceptional cases by order of the court on cause shown, does not apply to a cause which has been heard where the term ends before entry of the decree.

[Ed. Note.—For other cases, see Courts, Cent. Dig. §§ 926–932; Dec. Dig. ☞352.]

2. APPEAL AND ERROR ☞173—GROUND FOR DISMISSAL.

An appeal will not be dismissed on the ground that there was no proof of complainant's ownership of the cause of action sued on, where the point was not made before the trial court.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. §§ 1079–1089, 1091–1093, 1095–1098, 1101–1120; Dec. Dig. ☞173.]

3. PARTIES ☞48—PLEADING—AMENDMENT.

Denial of a motion to amend an intervening petition after a delay of four years *held* not error, where intervening rights would be affected by the amendment.

[Ed. Note.—For other cases, see Parties, Cent. Dig. § 75; Dec. Dig. ☞48.]

---

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

4. MORTGAGES ☞199—RELATION OF MORTGAGOR TO PROPERTY—DUTIES ASSUMED TO MORTGAGEE.

A mortgagor or his agents, operating the property in due course of business, is not technically a trustee for the mortgagee, and is under no obligation to pay over the income or profits to the mortgagee, even where the mortgage covers income, until demand is made for the income, or for surrender of possession of the property; but the mortgagor holds the stable property under the implied confidence reposed and obligation assumed to preserve it intact as security for the mortgage debt.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 513–525; Dec. Dig. ☞199.]

5. MORTGAGES ☞205—CONVERSION OF PROPERTY BY MORTGAGOR—RIGHTS OF MORTGAGEE.

A mortgagor is liable if he wastes or converts to his own use the mortgaged property, and the property itself may be followed by the mortgagee in the hands of third persons, except purchasers without notice, without the necessity of proving fraud.

[Ed. Note.—For other cases, see Mortgages, Cent. Dig. §§ 460, 544–550; Dec. Dig. ☞205.]

6. STREET RAILROADS ☞52—RELATION OF PURCHASER TO MORTGAGED PROPERTY—RIGHTS OF MORTGAGEE.

A street railway company, which through stock purchases secured control of a competing company and caused its property to be conveyed to itself, subject to underlying mortgages which covered also the income and good will of the mortgagor, thereby assumed a fiduciary relation to the mortgaged property, and became liable to the secured bondholders for any improper diversion of the same, including its income and the business and good will of the mortgagor.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 130, 131; Dec. Dig. ☞52.]

7. STREET RAILROADS ☞52—RIGHTS OF MORTGAGEE—PROPERTY DIVERTED TO BENEFIT OF SECOND MORTGAGEE.

Mortgagees of the succeeding company, who obtained the benefit of any property so diverted as an increment to their security, on enforcing their mortgages, would also be accountable for its value to the mortgagees of the former owner.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 130, 131; Dec. Dig. ☞52.]

8. STREET RAILROADS ☞52—RIGHTS OF MORTGAGEE—SUIT FOR DIVERSION OF PROPERTY.

That the property at the sale did not bring enough to pay a prior mortgage did not affect the right of petitioner, a bondholder of the prior owner, to maintain the proceeding, since he is not concluded by such price, and is, furthermore, in case of recovery, entitled to the entire amount, if necessary to pay his bonds, to the exclusion of all other bondholders, who could have joined with him, but did not.

[Ed. Note.—For other cases, see Street Railroads, Cent. Dig. §§ 130, 131; Dec. Dig. ☞52.]

Appeal from the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Suit in equity by the Bowling Green Trust Company, trustee, against the Virginia Passenger & Power Company and others. Charles Hall Davis, intervener, appeals from a decree dismissing his petition against the Virginia Railway & Power Company and others. Reversed.

☞For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

James Mann, of Norfolk, Va., and William Hodges Mann, of Richmond, Va. (Mann & Son, of Richmond, Va., and Mann & Tyler, of Norfolk, Va., on the brief), for appellant.

Henry W. Anderson, of Richmond, Va. (Munford, Hunton, Williams & Anderson, of Richmond, Va., on the brief), for appellees.

Before PRITCHARD, KNAPP, and WOODS, Circuit Judges.

WOODS, Circuit Judge. In the early development of electric lighting and transportation in and near the cities of Richmond and Petersburg, Va., the business was divided among a number of companies. There were numerous issues of stock, and many mortgages were executed by the several corporations. About the year 1900 the process of consolidation of these companies began. After some years they were all placed in the hands of receivers under proceedings to foreclose their mortgages. All of the foreclosure suits were consolidated into one, under the title of "Bowling Green Trust Company, Trustee, v. Virginia Passenger & Power Company and Others," and a decree of foreclosure was entered October 24, 1908, directing a sale of all property of all the companies. The sale was accordingly made on May 5, 1909, for $8,100,000, to a committee representing a large majority of bondholders, who had come together and agreed upon a plan of reorganization of the property. The bid was confirmed, and title made to the Virginia Railway & Power Company, a new corporation organized to carry out the reorganization. The contest now before us, between Charles Hall Davis and the Virginia Railway & Power Company, the purchaser of the property, depends upon the transactions of the Richmond Passenger & Power Company and the Virginia Passenger & Power Company, two of the mortgagor corporations, with each other, and all of the complex matters not bearing on the contest will be omitted in stating the issues. The Richmond Passenger & Power Company will be hereinafter spoken of as the Richmond Company, and the Virginia Passenger & Power Company as the Virginia Company.

The Richmond Company executed a mortgage on January 1, 1900, to the Merchants' Trust Company, securing a bond issue of $2,877,000, and on July 1, 1900, another mortgage to the Metropolitan Trust Company, securing a bond issue, known as debenture bonds, of $1,000,000. In addition to these, there was a senior mortgage on property acquired by the Richmond Company from the Richmond Railway & Electric Company, securing bonds to the amount of $123,000, and a senior mortgage on property acquired from the Richmond & Manchester Railway Company securing bonds to the amount of $400,000. The total of these bonds outstanding against the Richmond Company was $4,400,000.

In December, 1901, the Virginia Passenger & Power Company was formed by the consolidation of the Virginia Internal Improvement Company with the Southside Railway & Development Company. In this transaction, the Virginia Company acquired a large majority of the stock of the Richmond Company, and thus controlled its operations. By virtue of this control, the Virginia Company elected the directors of the Richmond Company, who elected the managing officers of the

Virginia Company to be managing officers of the Richmond Company. The purpose was to consolidate the companies which were competitiors of each other, and the effect was to operate them together under the control of the Virginia Company. By deed dated January 23, 1902, the Richmond Company conveyed to the Virginia Company some of its lines of railway, subject to its mortgages of $3,400,-000, above recited; the Virginia Company assuming and agreeing to pay the Richmond Company's debenture bonds of $1,000,000. By another deed, dated June 3, 1902, the Richmond Company conveyed to the Virginia Company other lines in consideration of $500,000 to be paid by the Virginia Company. It is alleged that neither the debenture bonds nor the $500,000 purchase money was ever paid. In June, 1902, the Virginia Company acquired control of other companies with a view of consolidation of the entire electric street car and power business of the vicinity. As a means of accomplishing this purpose the Virginia Company, on June 18, 1902, executed a mortgage to the Merchants' Trust Company to secure bonds to the amount of $15,000,-000, which was by proper instruments made a lien on all the property thus brought into the consolidation, subject to existing mortgages. Afterwards the Bowling Green Trust Company was substituted as trustee under this mortgage. From the proceeds of this bond issue the existing mortgages and bonds, including the debenture bonds of $1,-000,000 of the Richmond Company, were to be paid. Of the consolidated bonds there were issued and sold by the Virginia Company $6,-508,000, and pledged $1,303,000, making a total of $7,811,000. The remaining bonds of the proposed issue of $15,000,000 were reserved for the retirement of the underlying bonds of the several corporations. This plan of consolidation failed, and the old bond issues were not paid nor retired by the new bonds.

Afterwards foreclosure proceedings were instituted by the trustee under the mortgage of the several corporations, receivers were appointed, and the sale was made as above recited. In the progress of litigation the Metropolitan Trust Company, trustee under the mortgage securing $1,000,000 of the debenture bonds of the Richmond Company, charged in the bill for foreclosure that, after the Virginia Company secured control of its competitor, the Richmond Company, it was guilty of these wrongs against the Richmond Company and against the Metropolitan Trust Company as trustee of the mortgage securing the debenture bonds of that company: First, that it so managed generally the property and business of the Richmond Company as to divert to its own use earnings, income, business, and good will of that company, and so mingled its property with its own that full identification became impossible without an accounting under the order of the court; second, that the Virginia Company converted to its own use the lines of railway conveyed to it on January, 1902, and June, 1902, and received all the income and profits therefrom, paying no consideration for either the property or its use.

The issues made on these charges were referred to Hon. A. L. Holliday, as special master. After taking much testimony the master filed his report on July 25, 1908, making as we understand the following

findings: First, if the Virginia Company sustained no fiduciary re-lation to the Richmond Company or its bondholders, and if the mat-ter was to be considered as depending on a charge of fraudulent con-version by one party of the property of the other, then the burden of clearly proving the fraud devolved upon the Metropolitan Trust Com-pany as a condition of obtaining relief, and that under this test it had failed to make good its allegations; second, if the Virginia Company was the trustee of the property and business of the Richmond Com-pany, then the master should be instructed to ascertain and report the value of the income, business, and property diverted from the Rich-mond Company to the Virginia Company, and that relief should be granted in consequence of the diversion; third, that it would be useless for the master to go into this inquiry unless the court found that the Virginia Company sustained the relation of trustee to the Richmond Company. The master asked instructions from the court, so that the matter might proceed before him to ascertainment of the value of the property diverted, or be dropped, according to the view of the law taken by the court.

The Metropolitan Trust Company objected to the foreclosure sale until the issues made by its petition as to the diversion of the property of the Richmond Company should be passed upon. The objection was held insufficient in a decree of the District Court, affirmed on appeal by this court. 168 Fed. 1021, 93 C. C. A. 671. There were exceptions to the master's report by the parties interested. Before the exceptions to the report were passed upon by the court the decree of foreclosure was made, containing this reservation:

"The court reserves the right to hereafter determine all questions in con-nection with the diversion of earnings, business, property, and income to the Virginia Passenger & Power Company from the Richmond Passenger & Power Company, as set forth in the pleadings herein and the reports of the special master, and to enforce against the property purchased and the earnings and income thereof in favor of the said Metropolitan Trust Company of the City of New York, as trustee, and the petitioners Howe and others, and the debenture bondholders, any lien or claim to which the said trustee or bondholders shall be entitled, and to afford such trustee or bondholders and petitioners such other and further relief as to such alleged diversion with respect to such pur-chaser, his successors and assigns, and the property purchased, as the court shall determine to be just and equitable; the intent being that the rights of the Metropolitan Trust Company of the City of New York, as trustee, and the debenture bondholders, and of the petitioners Howe and others, to establish any claim they may have for diversion of earnings, property, business, and income of the Richmond Passenger & Power Company by the Virginia Pas-senger & Power Company, or the receivers herein, and to enforce against the property purchased any claim or lien, legal or equitable, to which they may be entitled, and to apply any money or property recovered to the benefit of the debenture bondholders, in all respects as if this decree had not been made."

After the sale the Metropolitan Trust Company refused to press the matter further, giving as a reason lack of support and indemnity from the bondholders of the Richmond Company. On March 12, 1910, Charles Hall Davis, as the owner of 71 of the debenture bonds, re-fusing to accept as equitable the provision made for the debenture bonds of the Richmond Company in the reorganization, filed his peti-tion, making the same allegations as to the diversion of the property

of the Richmond Company to the Virginia Company. The appeal is from the decree of the District Court refusing to allow the petitioner, Davis, to amend his petition, and from the final decree dismissing the petition.

We consider first the motion to dismiss the appeal, made on the grounds: (a) Because the appeal was not allowed within six months after the final judgment; (b) because it does not appear in the record that the appellant is the owner of the 71 debenture bonds; (c) because it appears on the face of the record that, even if the Virginia Company did convert and bring under its mortgages a part of the property subject to the mortgages under which petitioner claims, the property brought in the foreclosure sale so much less than the amount of the senior mortgages that it would be impossible for the petitioner to have any substantial interest in the property converted.

[1] The District Judge filed a written opinion to the effect that the petition should be denied, on December 13, 1911; but the decree was not entered until January 14, 1914, and on June 20, 1914, less than six months thereafter, the appeal was allowed. But it is argued that the case was finally disposed of by being automatically dropped from the calendar on October 4, 1913, the last day of the April term, under the requirement of equity rule 57 (198 Fed. xxxiv, 115 C. C. A. xxxiv), and that the failure to appeal within six months from that date was fatal. The point is not well taken. The rule forbidding continuances was meant to prevent delay in the hearing of causes, and perhaps it was intended also as a stimulating admonition to judges to decide cases as promptly as possible; but it does not mean that after a case has been heard it shall be dropped from the calendar at the end of the term and thus disposed of before the court has made a final decree. Besides, the court on October 13, 1913, made an order reciting that a number of important matters, including the claim of petitioner, had been left open, and directing that the cause be continued from the April, 1913, term, and that the order be entered nunc pro tunc as of October 4, 1913, the last day of that term. Even if this order was erroneous, it now stands in force. There was no appeal from it, and under rule 57 the court does not finally lose jurisdiction of a cause when it is dropped from the calendar for lack of proper continuance. But even if the order had no effect as an order of continuance, it should be regarded in substance an order to reinstate the cause for a hearing, since it was manifestly the intention of the court to bring the cause before it to dispose of the matters undecided. Any other construction would involve an oppressive yielding to mere form. In addition to this, the order of continuance as to other matters was made at the instance of counsel for respondent. A party cannot avail himself of the provision of an order in his favor and allege against a like provision as to another party.

[2] The appeal cannot be dismissed on the ground that there is no affirmative proof that the petitioner is the owner of the bonds. A review of the record leads to the conclusion that this point was not made before the District Court. The point is, therefore, not available as a ground of motion to dismiss. Pine River Logging Co. v. United

States, 186 U. S. 279, 22 Sup. Ct. 920, 46 L. Ed. 1164; Mo. Pac. Ry. Co. v. Fitzgerald, 160 U. S. 575, 16 Sup. Ct. 389, 40 L. Ed. 536. As the evidence taken is not in the record, the court cannot say there was no proof of ownership of the bonds.

The third ground of the motion is too much involved in the merits to be considered on a motion to dismiss, for the question whether the petitioner has any practical interest in the assets which he seeks to follow can only be decided on careful consideration of the relations of the parties to the property. The motion to dismiss is refused.

[3] There is no ground on which the court can reverse the order denying the motion to amend. The original petition is sufficiently broad to make relevant all competent testimony on the subject of diversion of the assets of the Richmond Company by the Virginia Company, or the receivers, and the amendment on that subject seems unnecessary. Although the sale was made on May 5, 1909, and the petition was filed on March 12, 1910, the motion to amend was not made until January 17, 1914. In the meantime the purchaser had gone forward for nearly four years with the management of the property without notice of any claims of the petitioner beyond those set up in the original petition; and securities issued under the reorganization no doubt had been bought and sold. No sufficient excuse is given for the long delay. The proposed amendments would bring in serious charges involving the whole plan of reorganization and other important matters. Under the circumstances the long delay was sufficient ground for the refusal to allow the amendment.

[4, 5] Coming to the vital matter of the alleged diversion of assets of the Richmond Company to the Virginia Company, in view of the report of the master on the subject, the first inquiry is: What relation did the Virginia Company assume to the holders of the mortgage bonds of the Richmond Company when it took control of that company? On reason and authority the general rule is obvious that the mortgagor, or his agents, operating the property in due course of business, is not technically a trustee for the mortgagee, and is under no obligation to pay over the income or profits to the mortgagee, even when the mortgage covers income, until demand is made for the income or for surrender of the possession of the property. Galveston R. Co. v. Cowdrey, 11 Wall. 459, 20 L. Ed. 199; Gilman v. Ill. Tel. Co., 91 U. S. 603, 23 L. Ed. 405; Dow v. Memphis R. Co., 124 U. S. 652, 8 Sup. Ct. 673, 31 L. Ed. 565; Sage v. Memphis & L. R. Co., 125 U. S. 361, 8 Sup. Ct. 887, 31 L. Ed. 694. Therefore, as to the income received in the due course of business, the mortgagor corporation sustains no fiduciary relations to the mortgagee. But it seems equally obvious that the mortgagor holds the stable mortgaged property under the implied confidence reposed and obligation assumed to preserve it intact as security for the mortgage debt. 39 Cyc. 558. If he wastes it or converts it to his own use, he is liable. 27 Cyc. 1269. And it may be followed in the hands of third persons, except purchasers without notice. Chicago R. Co. v. Third Nat. Bk., 134 U. S. 276, 10 Sup. Ct. 550, 33 L. Ed. 900. To recover property so converted, or its value, it is not necessary, as the master seems to

have thought, for the mortgagee to prove fraud. The right of action arises on the violation of confidence reposed and the obligation assumed, even if the violation be due to negligence.

[6] The stable property covered by the mortgage of the Richmond Company consisted of its railways, machinery, lands, and other property, not as inactive or dead assets, but as instrumentalities of an active business, upon the proper conduct of which the value of the property depended. This is made more clear by the inclusion in the mortgage of the good will of the company. The obligation of the mortgagor to the mortgagee was to keep up the value of the security by using all reasonable means to conserve the business. Therefore, while the mortgagee had no right to demand payment of income, it did have the right to require the mortgagor to account for the depreciation in the value of the mortgaged property due to improper diversion of the business and income of the corporation appropriated by the mortgagor; and the good will attached to the property was a part of it. Metropolitan Nat. Bk. v. St. Louis Dispatch Co., 149 U. S. 436, 13 Sup. Ct. 944, 37 L. Ed. 799; Linder v. Hartwell R. Co. (C. C.) 73 Fed. 320. When the Virginia Company acquired stock control of the Richmond Company, and undertook its management in conjunction with the management of its own affairs under the same executive officers, it became responsible by reason of its control for any diversion of the mortgaged property. As a majority stockholder in control it became a trustee for the minority stockholders. Jones v. Mo. E. E. Co., 144 Fed. 765, 75 C. C. A. 631; Central Improvement Co. v. Cambria Steel Company, 210 Fed. 696, 127 C. C. A. 184. By the same principle as the majority stockholder in control, the Virginia Company became a fiduciary holding the mortgaged property to answer to the mortgage debt. Farmers' L. & T. Co. v. N. Y., etc., R. Co., 150 N. Y. 410, 44 N. E. 1043, 34 L. R. A. 76, 55 Am. St. Rep. 689.

There is no intrinsic wrong in these trust relations; and there is no presumption of a breach of trust. A charge by the beneficiary of diversion or conversion of trust property by mingling it with the property of the trustee, or otherwise, must be proved. But, on the other hand, the rule is applicable that when a beneficiary of a trust proves against the trustee that there has been a conversion of the trust property by adding it to the like estate of the trustee, the law then places on the trustee the duty of accounting by separating the trust property from his own or proving and paying its value. National Bk. v. Insurance Co., 104 U. S. 54, 26 L. Ed. 693. This rule has special force and significance when one corporation acquires control of another competing with it in business.

[7] Further, if the executive officers of the two companies so managed that a part of the Richmond Company's street railway, or any other tangible property, or the good will attached to it, was turned over to the Virginia Company, and fell under the mortgages of that company, thus increasing its security, the mortgagees of the Virginia Company, upon enforcing their security, would be liable to account to the mortgagees of the Richmond Company for the amount they real-

ized, or should have realized, from the converted property as an increment to their security taken from the security of the mortgages of the Richmond Company. Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 389; Sou. Ry. Co. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458.

The petitioner has the right also to show that the management of the receivers resulted in the diversion of property subject to the debenture mortgage so that it fell under the mortgages of the Virginia Company. It is true, their reports Nos. 20 and 27, as to the management of the property and the application of income were confirmed, but the order of confirmation contained this provision:

"Leave is reserved to any party in interest, for cause shown, to have said accounts recast from the date of the appointment of the receivers, or from any subsequent date."

It is true, also, that the order dismissing the petition must be held to adjudge that good cause.has not been shown for having the receivers' accounts recast. But the method of keeping the accounts adopted by the receivers is so closely related to the method adopted while the Virginia Company was in control that it seems reasonable to infer that the ground for refusing to open the accounting was the same in each case. Of course, the opportunity to have the accounts recast, so as to ascertain whether any errors added to the value of the property of the Virginia Company at the expense of the Richmond Company, in no wise affects the discharge of the receivers.

There is no substantial question of notice to the mortgagees of the Virginia Company of the alleged diversion of property of the Richmond Company and increment to the property covered by their mortgages resulting therefrom, for the diversion is alleged to have taken place after the execution of the last mortgage on June 18, 1902.

[8] The position is taken by the respondent that, if all that is charged as to the diversion of the Richmond Company's property be assumed as true, it cannot avail the petitioner under the facts of the case. The argument is this: The property covered by the mortgage securing petitioner's bonds brought at judicial sale $900,000 less than the senior mortgages; the recovery, if any, in this proceeding, would be applied to that balance, and would be insufficient to pay it, and therefore the petitioner could not possibly be benefited by any recovery. We think the argument fallacious. The reservation in the order of sale provided that no rights of the debenture bondholders should be affected by it—that they should stand "in all respects as if the decree had not been made." This means that the petitioner is not bound by the bids at the sale as an ascertainment of the value of the property, or in any other respect. Sou. Ry. Co. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458. In other words, he is no more bound by the result of the sale than he would have been as a creditor not a party to the cause, and hence he was entitled to the same protection given to such a creditor in N. P. Ry. Co. v. Boyd, 228 U. S. 504, 33 Sup. Ct. 554, 57 L. Ed. 931. Therefore, he may show that the property as sold was of sufficient value to satisfy the senior mortgages.

229 F.—41

The argument fails for another reason. The holders of the bonds secured by the senior mortgages and the other debenture bondholders of the Richmond Company had the opportunity to join the petitioner in his effort to recover property which he alleged had been taken from that on which they all relied for security. They refused .to enter the contest, and accepted as full payment and satisfaction of their bonds the settlement offered in the reorganization. Thus the petitioner was ·left as the only bondholder who chose to avail himself of the reservation and make the contest, and it follows that he alone is entitled to receive the fruit of his effort. Had there been no sale, the result of the refusal of the other bondholders would have been the same. All other creditors waived their rights, and were in the position of saying, either that there was no merit in petitioner's contention, or that they were unwilling to make any effort to bring under the security the property alleged to have been diverted. Evidently, under such conditions, the property which may be recovered or brought back as a part of the assets of the Richmond Company by petitioner's efforts and .expense would be applicable to his bonds. The principle is well settled by authority. Freedman S. & T. Co. v. Earle, 110 U. S. 710, 4 Sup. Ct. 226, 28 L. Ed. 301; Edmeston v. Lyde, 1 Paige (N. Y.) 637, 19 Am. Dec. 454; 8 R. C. L. 38.

Thus we have endeavored to state the legal principles applicable to the alleged relations of the parties. After the petition was filed it seems clear that under the reservation in the order of sale the petitioner .as a debenture bondholder of the Richmond Company was entitled to the benefit of any exceptions by the Metropolitan Trust Company to the master's report germane to the petition, and it was his right to have these exceptions passed upon by the court. The dismissal of the petition was in effect overruling the exceptions of the Metropolitan Trust Company and sustaining the exceptions of the Virginia Company. As we have seen, the court was in error in holding that there was no fiduciary relation of the Virginia Company to the Richmond Company, as to all of its property, including income, and to the bondholders of the Richmond Company as to the stable property and good will attached to it, subject to the mortgage securing the debenture bonds. If it be true, as contended by respondent, that the court held in dismissing the petition that diversion of the property of the Richmond Company could not avail the petitioner, ·this was error, because the petitioner as the active creditor would be entitled to the entire fund recovered in preference to other creditors who refused to participate in the proceedings.

· The evidence is not before us, and we are therefore unable to say that it conclusively shows there was no diversion of property of the Richmond Company and that these errors were harmless.

For these errors ·the decree must be reversed, so that the court or the master may ascertain what was the value of all the property, if any, including the attached good will diverted from the Richmond Company by the Virginia Company, or the receivers, which was subject to the mortgage securing the debenture bonds.

The petitioner will be entitled to have his claim paid out of any

property which may have been taken from the security of his mortgage and added to the security of the mortgages of the Virginia Company, or in any wise disposed of by the Virginia Company so that it was embraced in the foreclosure sale as a part of that company's property. Under the reservation in the order of sale the purchaser will be liable to the petitioner for the value of any property so converted and sold.

Much was said in the argument as to the plan of reorganization, the petitioner contending that he was entitled to a decree against the new corporation for the amount of his debt, under the principles announced in N. P. Ry. Co. v. Boyd, 228 U. S. 504, 33 Sup. Ct. 554, 57 L. Ed. 931. The point is not available to the petitioner, for the reason that it is not alleged as a ground of relief in his petition.

The decree is reversed, and the cause remanded for further proceedings in accordance with this opinion.

Reversed.

## On Rehearing.

This court, at its November term, 1915, rendered its decision reversing the decree of the said District Court appealed from in this cause, and the appellees, by their counsel, on December 3, 1915, presented to the court a petition for a rehearing of the cause, and the same has been carefully considered.

Only one remark need be made as to a view of the plea of purchaser for valuable consideration without notice, alleged to have been overlooked by this court. It is insisted that, since the consolidated mortgage of the Virginia Company of June 18, 1902, covers after-acquired property, the mortgagee is entitled to take as purchaser for value without notice any accretions to the property covered by the mortgage, even though due to the diversion of the property of the Richmond Company to the Virginia Company. Since any diverted or converted property of the Richmond Company rested under the lien of the prior and duly recorded mortgage given by the Richmond Company, under which the petitioner claims, it seems reasonably plain that such property could not be freed from the lien of that mortgage and brought under the lien of the Virginia Company's mortgage as after-acquired property by the mere act of diverting and converting it to the use of the Virginia Company.

The refusal of this court to dismiss the appeal on the ground that the appellant had not shown ownership of the bonds is not to be taken as an adjudication of that issue.

It is now here ordered by this court that the rehearing asked for be, and the same is hereby, denied at the cost of the appellees.