BOWLING GREEN TRUST CO. v. VIRGINIA PASSENGER & POWER CO. et al. METROPOLITAN TRUST COMPANY OF CITY OF NEW YORK v. RICHMOND PASSENGER & POWER CO. et al. DAVIS v. VIRGINIA RY. & POWER CO. et al.

(District Court, E. D. Virginia. November 29, 1921.)

1. **Street railroads ⊕⤳52—Bondholder held entitled to follow diverted funds.**

   Recovery by a street railway bondholder seeking to follow income improperly diverted from mortgage security by trustee under the mortgage prior to institution of receivership suit and by receiver appointed by the court, both of whom occupied a fiduciary relationship, is not limited to the date of institution of the receivership suit, but from time of the diversion of the property.

2. **Appeal and error ⊕⤳1195 (1)—Decision on appeal law of case.**

   Federal District Court is bound by decisions of the Circuit Court of Appeals in the case before it.

In Equity. Suit by the Bowling Green Trust Company, trustee, against the Virginia Passenger & Power Company and others, in which Charles Hall Davis intervened: and by the Metropolitan Trust Company of the City of New York against the Richmond Passenger & Power Company and others. Decree for intervener.

See, also, 271 Fed. 38.

W. H. Mann & Son, of Petersburg, Va., and Mann & Tyler, of Norfolk, Va., for Davis, petitioner.

Munford, Hunton, Williams & Anderson, of Richmond, Va., for defendants.

WADDILL, Circuit Judge. This cause is now before the court on the questions arising on the petition of Charles Hall Davis, filed on the 12th day of March, 1910, and especially upon the exceptions of the Virginia Railway & Power Company and others to the report of Special Master Addison L. Holladay, filed herein on the 7th day of April, 1920, in regard to said claim.

The cause was first heard in this court upon the petition of said Davis, which in brief set forth that he was the owner of certain debenture bonds of the Richmond Passenger & Power Company secured by a mortgage of that company, covering an issue of $1,000,000, to the Metropolitan Trust Company of the City of New York, trustee; that the Virginia Passenger & Power Company, having acquired by purchase the property of the Richmond Company, subject to certain existing liens thereon, including the debenture mortgage aforesaid, and in addition assumed especially the payment of the $1,000,000 issue of

bonds secured by the last-named mortgage, the Virginia Company in the matter of the ownership and operation of the property of the Richmond Company occupied to the bondholders secured by the mortgage, of which petitioner was one, the relation of trustee; that it had failed to discharge its fiduciary duty in this respect, and on the contrary neglected the same, and diverted and participated in the diversion of certain property belonging to the Richmond Company, to wit, the amount and value of the good will, customers, and property of said Richmond Company, which was subject to the lien of the debenture mortgage, and caused the same to be transferred to the Virginia Company, and included in the mortgage executed by the Virginia Passenger & Power Company to secure its indebtedness, which resulted in the loss of the property so diverted from the Richmond Company, and the same was subsequently sold in these foreclosure proceedings on account of the Virginia Company, and transferred to the Virginia Railway & Power Company, the purchaser of the combined properties.

This court, without a formal opinion, by order entered on the 17th day of January, 1914, having concluded that no such fiduciary relation existed between the bondholders of the Virginia Company and those of the Richmond Company, as contended, and that no recovery could be had by the petitioner on account of the property in question, dismissed the petition. From this order, an appeal was taken to the Circuit Court of Appeals for the Fourth Circuit, and that court in an elaborate opinion (229 Fed. 633, 144 C. C. A. 43) reversed this court's action in its entirety, holding that the fiduciary relation existed, and that the property sought to be reached, if the diversion was established, was subject to the payment of petitioner's claim, and that by reason of petitioner's diligence he was entitled to be paid the amount of his bonds, to the exclusion of all other lienors or creditors of the Richmond Company. In this decision of the Circuit Court of Appeals will be found a full history of the litigation, which makes it unnecessary for further repetition here, and to that opinion reference is likewise made for the reasons controlling the appellate court.

Subsequent to this decision establishing the fiduciary relation, an order was entered on the 15th day of August, 1916, directing the special master to pursue his investigation in reference to the alleged diversions from the Richmond Company to the Virginia Company, and all other matters alleged in the bill of complaint of the Metropolitan Trust Company and the petition of the said Charles Hall Davis and the answers to said bill and petition. The special master was directed to report the facts, with his conclusions and recommendations not theretofore fully reported, as established by the testimony already taken in the consolidated cause, as well as such additional testimony as should be adduced. The court certified to the master a copy of the opinion of the Circuit Court of Appeals, as answering questions submitted by the master to the court in his former report of the 24th day of July, 1908, prior to the dismissal of the Davis petition, and as instructing him upon the questions of law in that proceeding. These questions are as follows:

"1. The value of the good will and accounts of the Richmond Company, covered by its debenture mortgage, which have been transferred to the Virginia Company and brought under the provisions of its mortgage of June 18, 1902.

"2. Whether the Virginia Company should be treated as holding said property as trustee for the Richmond Company; and, if so, the measure of relief which should be granted to the Richmond Company in respect to (a) income derived from said property during the receivership, and (b) the proceeds to arise therefrom upon a foreclosure under the Virginia mortgage?

"3. Whether new business naturally belonging to the Richmond Company was improperly diverted therefrom and taken in the name of the Virginia Company; and, if so, what relief, if any, should be granted."

These questions this court did not answer, but dismissed the petition, being of opinion that the fiduciary relation did not exist and that petitioner's claim was without merit, which action of this court as above stated was reversed. Upon the recommittal of the cause to the master, after a most elaborate hearing, he reported that the petitioner Davis was the owner of 71 bonds, secured under the debenture mortgage of the Richmond Company, of $1,000 each; that he was entitled to recover for the entire 71 bonds, 27 of which had theretofore been hypothecated by him as collateral security with the American Bank & Trust Company, on account of an indebtedness due by him to said company; that said petitioner was entitled to interest on said bonds at the rate of 5 per centum per annum from the 1st of July, 1904, to January 1, 1920, to wit, the sum of $55,025, and likewise to 71 coupons of $25 each, to wit, $1,775, together with interest thereon at the rate of 5 per cent. from July 1, 1904, to January 1, 1920, namely, $1,375.62, making in the aggregate, principal and interest, due the petitioner, $129,175.62. The master likewise held that the evidence established diversions and withdrawals of property by the Virginia Company from the Richmond Company, subject to the lien indebtedness of the latter company, caused by the erroneous carrying of collections from customers of the Richmond Company, thereby causing the same to be credited to the Virginia Company, and treated as its property, when they should have been credited to the Richmond Company as its property, and that the amount of collections thus diverted from the Richmond Company to the Virginia Company was covered by the mortgage of the latter company, and passed to the purchaser of the property of said company under the foreclosure proceedings herein.

The master held that these diversions caused by the manner of keeping the accounts of the two companies amounted, principal and interest, to $134,015.28, as of January 1, 1920, of which $14,889.81 occurred prior to the receivership, and $119,125.47 after the receivership. The master in his report treats these latter accounts as "undenied diversions," and in another portion of his report he found what he termed "further diversions" in different classes, particularly described in his report, including interest as of January 1, 1920, amounting to $278,420.91, which he likewise held was diverted by the Virginia Company and its receivers from the Richmond Company and its receivers, and withdrawn from the debenture mortgage of the Rich-

mond Company, and carried to and brought under the mortgage of the Virginia Company, by which action the bondholders of the Virginia Company received the benefit of that fund. The master reports that these two funds referred to as "undenied diversions" and "further diversions," the first being for $134,015.28 and the other for $278,-420.91, aggregating $412,436.19, arose from "diversion of earnings, income, customers and property, including good will of the Richmond Passenger & Power Company and its receivers, to the Virginia Passenger & Power Company and its receivers," which the bondholders of the Virginia Company, to the prejudice of the debenture mortgage bondholders received; and that so much of said sum as was necessary was applicable to the payment of petitioner's claim, as ascertained and set out in article 4, par. 2, of his report, to wit, for the sum of $129,-175.62 as of January 1, 1920; and that said petitioner had the right to enforce his claim to its full extent against all the property of the Virginia Railway & Power Company, purchased and acquired by that company under the decree of foreclosure herein and conveyance thereunder, as a lien prior and superior to all liens and incumbrances created by said purchaser, and personally against the Virginia Railway & Power Company, not to exceed the value of such property so purchased and acquired by it.

The master referred to other alleged diversions, but did not report finally thereon, being of opinion that those mentioned were ample to answer petitioner's claim, and that to make further investigation would consume a large amount of time and unnecessary expenditure of money.

The respondent the Virginia Railway & Power Company, both before the master and by exceptions to his report, and also the Equitable Trust Company of New York, substituted trustee, as fully set forth before said master, and in their written exceptions, raised many legal questions covering every phase of the litigation affecting their liability, including the fact that the petitioner Davis was not the lawful owner of all the bonds sued for; that he was estopped by his own relationship to the litigation from raising the question of diversion; that assuming the fiduciary relation existed, there were no such diversions of the property of the Richmond Company by the Virginia Company as would entitle him to recover or hold exceptants subject to an accounting for waste, his right in this respect being limited to an actual diversion of tangible property, and the good will annexed to it, from the mortgaged estate of the Richmond Company to the mortgaged estate of the Virginia Company; and that such tangible property and good will annexed was embraced in the foreclosure sale as a part of the property of the Virginia Company, and thus passed to the purchaser at the foreclosure sale, of which respondent insisted there was no proof. The respondent further insisted that there could be no recovery by the petitioner on account of income diverted prior to the possession of the mortgaged property by the receivers appointed in the Metropolitan suit.

The court does not feel, for the purpose of reaching the merits of the case, that it is necessary to pass upon many of the questions raised

by the exceptions, and before the master, though many of them involve close questions of law and fact. On the contrary, in the light of the decision of the Circuit Court of Appeals, and the findings of the master upon the reference thereunder, the court feels that it can reach what seems to it the proper conclusion, by passing upon the more material questions, as follows:

[1] First. As to the right of the petitioner to recover income arising from operation of the property prior to the receivership, undoubtedly it could not, that is to say, in an ordinary creditor's suit, having for its purpose the subjecting of property to payment of debts, and the possession thereof pending the litigation. The profits arising from the operation prior to the institution of the suit by the creditor would not be affected by the receivership, or at least would not be accounted for in such litigation; the owner or operator of the property being entitled to retain possession of it. Galveston R. R. v. Cowdrey, 78 U. S. (11 Wall.) 459, 483, 20 L. Ed. 199; Gilman v. Illinois & M. Telegraph Co., 91 U. S. 603, 23 L. Ed. 405; Dow v. Memphis & Little Rock R. Co., 124 U. S. 652, 8 Sup. Ct. 673, 31 L. Ed. 565. While the doctrine contended for, and which has the support of the cases cited, is undoubtedly correct, and under those decisions the petitioner would have no claim to recovery prior to the institution of the suit by the Metropolitan Trust Company in these proceedings, the suit here, and at least certainly the claim of the petitioner Davis, is not of the character contemplated by those cases, namely, a suit in which it is sought to subject property to the payment of debts in the ordinary course of litigation. The petitioner in this case is seeking to recover for property alleged to have been improperly diverted from the mortgaged security, liable for the payment of the mortgage debt, and to prove such diversion by the trustee under the mortgage prior to the institution of the receivership suit, and by the receivers appointed by the court in the progress of the litigation, and both of whom it is settled occupied a fiduciary relationship so far as the creditors of the Richmond Company are concerned. In this class of cases, if diversion can be established, the petitioner's right of recovery is not limited to the date of the institution of the receivership suit, but from the time of the diversion of the property. Shields v. Ohio, 95 U. S. 319, 324, 24 L. Ed. 357; Chicago, etc., v. Third Nat. Bank, 134 U. S. 276, 10 Sup. Ct. 550, 33 L. Ed. 900; Hollins v. Brierfield, etc., 150 U. S. 371, 383, 14 Sup. Ct. 127, 37 L. Ed. 1113; Linder v. Hartwell, etc. (C. C.) 73 Fed. 322, 323, 324.

Second. The respondents claim that the petitioner Davis cannot recover for the 27 bonds alleged to have been hypothecated by him, and that he is estopped by his connection with the transaction involved in the litigation from raising the question of diversion of assets, is not, in the judgment of the court, well taken, especially in view of the fact that both matters largely depend upon the correct determination of the facts bearing upon them, and as to each of which the master has taken considerable testimony, and determined them in favor of the petitioner Davis, which finding the court approves.

[2] Third. Considering the question of the diversion of assets, and whether the same are such as can be the subject of diversion, for which the petitioner can maintain a right of recovery, and the legal relation the parties bear one to the other, the court feels that whatever may have been its conclusion in the past, and its present conviction on the subject, it is bound by the decision of the Circuit Court of Appeals respecting the same, and that court having held that a fiduciary relationship did exist between the Richmond and Virginia Companies, it seems entirely clear that that court had in mind the right of the petitioner to recover for diversions of the character found by the master.

The decision of the Circuit Court of Appeals on these two questions being binding on the court, there only remains for determination, so far as the merits are concerned, whether the facts warrant the master's finding as to the diversion. The court has no idea that the respondents meant to concede that there were "undenied diversions" in the sense that they admit that there were such, for which a liability on them existed; still, that the testimony showed the diversion of assets as reported by the master, by reason of the erroneous manner of keeping the accounts, as set forth in the table in said report headed "Undenied Diversions," aggregating $134,015.28 as of January 1, 1920, there seems but little doubt. Certainly the testimony taken by the master is such as would forbid the substitution by the court of its judgment for that of the master, and the same may possibly be said of the finding of "further diversions" under article 6 of the report, aggregating $278,420.91. As to this latter finding, the court does not desire to pass specifically or express any opinion, since it seems unnecessary in the light of the present status of the case, the first finding of the master of the error arising from incorrect bookkeeping of $134,-015.28, being ample to cover the indebtedness and claim of the petitioner.

Fourth. The petitioner Davis is entitled to a decree against the Virginia Railway & Power Company for the full amount of $129,175.-62, with interest on $72,775 from the 1st of January, 1920, at 5 per cent. per annum until paid. On the entry of the decree, however, the rights of the American Bank & Trust Company, holder of the 27 bonds of $1,000 each as collateral, and 27 coupons of $25 each, with interest from January 1, 1920, at 5 per cent. per annum, will be preserved and protected.

Fifth. To the extent herein mentioned, and for the reasons stated, the master's report will stand approved and confirmed, and in all other respects action thereon for the time being will be deferred.

A decree in accordance with the above will be entered on presentation.