## VIRGINIA RY. & POWER CO. et al. v. DAVIS.

(Circuit Court of Appeals, Fourth Circuit. September 11, 1922.)

No. 1953.

1. Corporations ⊜473—Bondholder may follow mortgaged property diverted.

A purchaser of mortgage bonds of a corporation is entitled to all the security provided by the mortgage and to all the rights, interests, and remedies of the mortgagee, and may follow the mortgaged property wherever found, except in the hands of a purchaser for value without notice, though such property may have been diverted before his purchase.

2. Corporations ⊜473—Bondholders, receiving benefit of diverted assets of another corporation, required to make restitution to bondholders of latter.

Bondholders, who have received the benefit of assets rightfully belonging to another corporation, which is insolvent, will be required in equity to make restitution to the bondholders of the latter.

Appeal from the District Court of the United States for the Eastern District of Virginia, at Richmond; Edmund Waddill, Jr., Judge.

Suit in equity by the Bowling Green Trust Company, trustee, against the Virginia Passenger & Power Company and others, and by the Metropolitan Trust Company of the City of New York against the Richmond Passenger & Power Company and others, wherein Charles Hall Davis intervened. From a decree in favor of intervener, the Virginia Railway & Power Company and another appeal. Affirmed.

For opinion below, see 276 Fed. 965.

Before KNAPP and WOODS, Circuit Judges, and McDOWELL, District Judge.

Thomas B. Gay and Henry W. Anderson, both of Richmond, Va., for appellants.

James Mann, of Norfolk, Va. (Wm. Hodges Mann & Son, of Petersburg, Va., Mann & Tyler, of Norfolk, Va., and Wm. Hodges Mann, of Petersburg, Va., on the brief), for appellee.

WOODS, Circuit Judge. The leading facts out of which the issues involved in this appeal arose are set out in the opinion on a former appeal. 229 Fed. 633, 144 C. C. A. 43. The District Court directed—

⊜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

"Hon. A. L. Holladay, special master, to inquire into the questions of alleged diversions from the Richmond Passenger & Power Company to the Virginia Passenger & Power Company, and other matters alleged in the bill of complaint of Metropolitan Trust Company, of the city of New York, or the petition of Charles Hall Davis, and the answers thereto, except those concluded by the opinion of the Circuit Court of Appeals in the case of Charles Hall Davis v. Virginia Railway & Power Company handed down November 4, 1915."

After taking volumes of testimony, the master reported:

(1) Charles Hall Davis was at the time of filing his petition, and still is, the owner of 71 debenture bonds of the Richmond Company, and there was due thereon on January 1, 1920, $129,175.62.

(2) After allowing the Virginia Company .0073 per kilowatt hour for all current supplied to the Richmond Company, the net collections by the Virginia Company and its receivers from customers of the Richmond Company erroneously credited to the Virginia Company, when they should have been credited to the Richmond Company, with interest to January 1, 1920, amounted to $134,015.28. Of the aggregate principal so misapplied, the Virginia Company collected before the receivership $7,678.81, and the receivers $68,006.17. Neither the report nor the decree of the District Court points out precisely how these diversions inured to the benefit of the bondholders of the Virginia Company.

(3) The contracts of the Richmond Company with its customers were covered by its mortgages. Many of these contracts were unlawfully and unnecessarily transferred to the Virginia Company and sold under its mortgages. Deducting operating expenses, the net collections from customers on these unlawfully transferred contracts, which went into the treasury of the Virginia Company when they should have gone into the treasury of the Richmond Company, including interest to January 1, 1920, amounted to $278,420.91.

(4) The aggregate of these diversions and interest, $412,436.19, "was diverted by the Virginia Company and its receivers from the Richmond Company and its receivers, and withdrawn from the debenture mortgages of the Richmond Company and carried to and brought under the mortgage of the Virginia Company; that by this course of action the bondholders of the Virginia Company received the benefit thereof; that so much of said sum as may be necessary is applicable to the payment of petitioner's claim."

(5) No report is made of the value of these contracts themselves, reported as improperly transferred to the Virginia Company and sold under the mortgages of the Virginia Company, when they should have remained contracts of the Richmond Company and been sold under its mortgages.

(6) Other diversions were alleged, but not reported on, because the sum above found was more than sufficient to satisfy the amount found due the petitioner.

The District Court confirmed the report of the master as to the diversion of collections from customers of the Richmond Company which were improperly paid to the Virginia Company, and decreed that the claim of the petitioner should be paid by the Virginia Railway & Pow-

er Company, purchaser at the foreclosure sale, as provided in the reservation contained in the decree of foreclosure and sale.

Davis was owner of the 71 debenture bonds when he filed his petition, March 10, 1910. It is contended that by an agreement of April 12, 1912, he sold 27 of these bonds to American Bank & Trust Company. The agreement meant that Davis was released from personal obligation to pay the amount due the bank, but it did not contemplate that the bank should retain the proceeds of the "collaterals" described beyond the amount for which Davis had been liable. Davis did not in terms nor by implication surrender his right to redeem the collateral or to receive the surplus after the bank had been reimbursed. The dealings between the parties show that they so construed and acted on the agreement. The finding of fact by the master and the District Judge that it was so intended has abundant support in the evidence.

[1] It makes no difference whether Davis acquired the bonds before or after the diversion. The assignment of the bonds, whenever made, carried with it all the security provided by the mortgage and all the rights, interests, and remedies of the mortgagee. Davis, as assignee, had the right to follow the mortgaged property wherever found, except in the hands of a purchaser for value without notice. 3 Pomeroy's Eq. § 1210; Chicago, M. & St. P. Ry. Co. v. Third Nat. Bank, 134 U. S. 276, 10 Sup. Ct. 550, 33 L. Ed. 900; Shields v. Ohio, 95 U. S. 319, 24 L. Ed. 357; Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 339; Linder v. Hartwell R. Co. (C. C.) 73 Fed. 320; Zinn v. Denver Livestock Com. Co., 68 Colo. 274, 187 Pac. 1033. The cases holding that the assignee of the mortgage debt cannot by virtue of the assignment recover for waste of the mortgaged property or for trespass on it committed before the assignment are of doubtful authority; but, if sound, they have no application here.

[2] As we endeavored to make plain in the former opinion, the ultimate issue here is not between the Virginia Company and the Richmond Company. If the Virginia Company and its stockholders in control of the Richmond Company had wasted or stolen all the assets of the Richmond Company, that would not have involved the bondholders of the Virginia Company or the purchaser at the foreclosure sale in any liability to the bondholders of the Richmond Company or to any one else. The issue was and is between the bondholders of the Richmond Company and the bondholders of the Virginia Company as to the liability of the latter to the former, assumed by the purchaser at the foreclosure sale. That liability depends on whether assets which ought to have been applied to mortages of the Richmond Company were actually applied to the benefit of mortgagees of the Virginia Company. A court of equity will never allow one party to be unjustly enriched by having applied to his debt or for his benefit money or other assets under his control which ought to have been applied to the debt of another.

Dealing with the record then before the court, in the application of this principle it was said in the former opinion (229 Fed. 640, 144 C. C. A. 50):

"Further, if the executive officers of the two companies so managed that a part of the Richmond Company's street railway, or any other tangible property, or the good will attached to it, was turned over to the Virginia Company, and fell under the mortgages of that company, thus increasing its security, the mortgagees of the Virginia Company, upon enforcing their security, would be liable to account to the mortgagees of the Richmond Company for the amount they realized * * * from the converted property as an increment to their security taken from the security of the mortgages of the Richmond Company. Fosdick v. Schall, 99 U. S. 235, 25 L. Ed. 389; Sou. Ry. Co. v. Carnegie Steel Co., 176 U. S. 257, 20 Sup. Ct. 347, 44 L. Ed. 458. The petitioner has the right also to show that the management of the receivers resulted in the diversion of property subject to the debenture mortgage so that it fell under the mortgages of the Virginia Company. * * * The petitioner will be entitled to have his claim paid out of any property which may have been taken from the security of his mortgage and added to the security of the mortgages of the Virginia Company, or in any wise disposed of by the Virginia Company so that it was embraced in the foreclosure sale as a part of that company's property. Under the reservation in the order of sale the purchaser will be liable to the petitioner for the value of any property so converted and sold."

The District Court had by decree of October 15, 1904, required that, if the receivers paid out any funds of one company earned by another, the amount should be repaid from any funds belonging to the debtor company. When the receivers took charge of the property in 1904, they took over $2,033.50 cash in the hands of the Virginia Company. Obviously this sum would have passed into the hands of the receivers for the credit of the Richmond Company, but for the previous diversion of $7,678.81 to the treasury of the Virginia Company, which should have been in the treasury of the Richmond Company. This $2,033.50 entered into the final balance of $358,922.78 which the receivers had on hand for the Virginia Company at the time of the sale, and which they paid to the purchaser for the benefit of the bondholders of that company.

After the receivers were appointed, they collected $68,006.17 and credited it to the Virginia Company, when it should have been credited to the Richmond Company. No dividends were paid to stockholders. This sum also entered into the balance of $358,922.78 which the receivers had on hand to the credit of the Virginia Company at the time of the sale, which was paid to the purchaser at the foreclosure sale for the benefit of the bondholders of the Virginia Company, and which the bondholders of the Virginia Company had the benefit of. Thus it appears that of the diversions reported by the master of $75,684.89, the bondholders of the Virginia Company certainly received in the manner indicated the benefit of the two above-mentioned sums, $2,033.50 and $68,006.17, amounting to $70,039.67, which the mortgagees of the Richmond Company should have received. This sum, with interest, lacks $4,674.54 of being sufficient to satisfy the petitioner's claim as of August 1, 1920.

In the opinion of May 23, 1922, it was said we could find nothing in the record to show that more than $2,033.50 of the $7,678.81, diverted before the receivership from the assets of the Richmond Company and credited to the Virginia Company went to the benefit of the mortgagees of the Virginia Company. Upon careful reconsideration of the record, almost unprecedented in volume and complexity, we have reached

a different conclusion. While the Virginia Company was in control of the Richmond Company, it expended large sums of money for betterment of its own mortgaged property. The aggregate expenditure for such betterments on property purchased from the Richmond Company alone was alleged by the Virginia Company to be $233,957.70. The Virginia Company having made these expenditures for betterments from funds into which it had carried money belonging to the Richmond Company, it would be inequitable to say that the funds of the Virginia Company were expended for betterments and those of the Richmond Company for current expenses. Since operating expenses had to be paid first, the Virginia Company would have had at least the difference between the diverted sum, $7,678.81 and $2,033.51, the amount turned over to the receivers, equal to $5,645.31, less to apply to betterments, if it had not had in hand and used that sum diverted from the Richmond Company. It follows that the amount applied to betterments for the benefit of the mortgagees of the Virginia Company was increased by the amount of $5,645.31 so diverted and applied to betterments. These betterments inured to the benefit of the mortgagees of the Virginia Company at the sale.

On this reasoning we hold the mortgagees of the Virginia Company received the benefit of the entire sum, $75,684.89, diverted from the assets of the Richmond Company by the Virginia Company and its receivers. As already stated, the master does not report directly or definitely the value of the contracts themselves which were included in the mortgage of the Richmond Company and sold as property of the Virginia Company; but he reports as "further diversions" that collections thereon, with interest, amounted to $278,420.91. We express no opinion as to whether this amount was a diversion of the assets of the Richmond Company of which the bondholders of the Virginia Company received the benefit, since that question is not before us on this appeal.

Appellants set up the following items as due by the Richmond Company to the Virginia Company, which should be set off against the claim of Davis:

Expenditure by the Virginia Company in the construction, betterment and improvement of the outside railway lines of the Richmond Company ......... $233,957.70
An open account balance due the Virginia Company by the Richmond Company, December 31, 1903......... 544,555.31
Paid the Richmond Company by the Virginia Company as the purchase price of the remaining outside railway lines conveyed in the deed of June 3, 1902......... 500,000.00
Paid by the Virginia Company for the account of the Richmond Company as interest accrued on the debenture bonds......... 104,052.40
Losses sustained by the Virginia Company in the operation of the railway lines outside ......... $0,422.61

By deed dated January 23, 1902, the Richmond Company conveyed to the Virginia Company some of its lines of railway subject to its mortgages of $3,400,000, the Virginia Company assuming and agreeing to pay the Richmond Company's debenture bonds of $1,000,000. By another deed, dated June 3, 1902, the Richmond Company conveyed to

the Virginia Company other lines in consideration of $500,000 to be paid by the Virginia Company. Neither of these deeds were ever set aside; on the contrary, their validity seems to have been recognized in the pleadings without question. They must be treated as valid here, and the parties charged with all the incidents that flow from them. It follows that the charge of $500,000, "purchase price of the remaining outside railway lines," must be eliminated. The alleged expenditures of $233,975.75, expended "in the construction, betterment, and improvement of the outside railway lines," and the alleged losses of $30,-422.61 on the same, were really made on lines which the Virginia Company had acquired by the deeds above set out, and therefore were not chargeable to the Richmond Company. The sum of $104,052.40 paid for interest on the debenture bonds of the Richmond Company was contracted for as part of the purchase money of the property conveyed by the Richmond Company to the Virginia Company, and therefore cannot be charged to the Richmond Company. This leaves the open account of $544,555.81, which includes items for which appellants claim a supply lien to the amount of $203,241.03. It is not necessary to pass on the validity of this claim, since it is absorbed by the debt of $1,000,-000 which the Virginia Company agreed to pay in satisfaction of the debenture bonds of the Richmond Company.

The other questions made were decided in the former opinion and decree. Re-examination has confirmed the conclusions stated in the former opinion.

Affirmed.