UNITED STATES TRUST CO. OF NEW YORK et al. v. CHICAGO TERMI-
NAL TRANSFER R. CO. et al.

BRAINARD et al. v. SAME.

(Circuit Court of Appeals, Seventh Circuit. April 11, 1911.)

No. 1,693.

1. EQUITY (§ 114*)—INTERVENTION—NATURE OF RIGHT TO INTERVENE.
    Applications for leave to intervene are of two kinds: In one the applicant has other means of redress open to him, and it is within the court's discretion to refuse to incumber the main case with collateral

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

inquiries: in the other, the applicant's claim of right is such that he can never obtain relief unless it be granted him on intervention in the pending cause, and in such case the right to intervene is absolute, and the rejection of the petition is a final adjudication, and therefore appealable.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 275–279; Dec. Dig. § 114.*]

**2.** EQUITY (§ 114*)—FRAUD (§ 31*)—INTERVENTION — RIGHT TO INTERVENE— ELECTION OF REMEDIES.

One whose property rights have been injured by a fraud may elect to accept the situation created by the fraud and seek to recover his damages, or he may elect to repudiate the transaction and seek to be placed in statu quo; but the law should not make the election for him, and, if he elects to repudiate and recover his property, and such recovery cannot be had except by intervention in a pending suit, his right to intervene is not destroyed by the fact that he had an election of remedies.

[Ed. Note.—For other cases, see Equity, Cent. Dig. §§ 275, 279; Dec. Dig. § 114;* Fraud, Cent. Dig. § 27; Dec. Dig. § 31.*]

**3.** EQUITY (§ 114*)—INTERVENTION—CONSTRUCTION OF CONSENT ORDER.

After entry of a decree of foreclosure against a terminal railroad company, a lessee company asked for and obtained an order permitting it to redeem from the decree and be subrogated to the rights of the complainant therein. The stockholders of the terminal company, through a committee appeared by counsel and consented to the order, although claiming orally that the lease was fraudulent. The order recited that it was without prejudice to the right of the mortgagor or its stockholders to contest the validity of the lease and should not be held to determine such validity, but that no subsequent decree between the parties should affect or impair the subrogation or the right of the lessee to collect the **amount of the decree** "in the same manner and with the same rights as the original bondholders would have had." *Held,* that under the provisions of such order the stockholders of the terminal company were not entitled to intervene in the foreclosure suit for the purpose of attacking the decree as well as the lease on the ground that the latter was fraudulent and brought about the default and foreclosure, but that they were limited to a proceeding in some proper forum to hold the lessee liable in damages.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 114.*]

**4.** EQUITY (§ 71*)—LACHES—INTERVENTION TO ATTACK DECREE.

Where, after the entry of a decree of foreclosure against a terminal railroad company on a' mortgage securing its bonds, a lessee of its property obtained an order authorizing it to redeem from the decree and be subrogated to all the rights of the complainant thereunder, with the knowledge of the stockholders of the company, who, however, then claimed that the lease was fraudulent and made pursuant to a conspiracy to bring about the foreclosure, it was then incumbent on them, if they desired to contest the validity of the decree and seek a cancellation of the lease and a reinstatement of the company as a going concern, to take prompt action to that end, and a delay of two years before pressing for a consideration of their alleged rights constituted such laches as authorized the court in its discretion to deny them leave to intervene in the foreclosure suit for that purpose.

[Ed. Note.—For other cases, see Equity, Dec. Dig. § 71.*]

**5.** APPEAL AND ERROR (§ 95*)—EQUITY (§ 114*)—APPEALABLE ORDERS—INTERVENTION—EFFECT OF DENIAL OF PETITION.

An order denying a petition to intervene in a pending cause, if petitioners were entitled to intervene as a matter of right, was a final order and appealable, and in any event until it is set aside, either by the court

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

which entered it or by an appellate court, petitioners are not entitled to a hearing on a second petition based on the same grounds.

[Ed. Note.—For other cases, see Appeal and Error, Cent. Dig. § 652; Dec. Dig. § 95;* Equity, Dec. Dig. § 114.*]

Appeal from the Circuit Court of the United States for the Eastern Division of the Northern District of Illinois.

Suit in equity by the United States Trust Company of New York and John A. Stewart, trustees, against the Chicago Terminal Transfer Railroad Company and others. Frank Brainard, James H. Ralph, Arthur E. Friswell, and others, stockholders of defendant company, appeal from an order denying their petition for leave to intervene, and from an order denying a motion to vacate a sale of defendant's property. Affirmed.

Charles S. Holt and George Welwood Murray, for appellants.

Herbert R. Preston, William J. Calhoun, and James M. Sheean, for appellees.

Before GROSSCUP, BAKER, and SEAMAN, Circuit Judges.

BAKER, Circuit Judge. Two appeals are presented in the one record.

I. The first predicates error on the court's refusal to allow appellants as owners and representatives of common stock in the Terminal Company to intervene after foreclosure decree in the suit of the Trust Company, mortgagee, against the Terminal Company, mortgagor, the Baltimore & Ohio Railroad Company, lessee of part of the mortgaged premises, and others.

Default in paying interest on the $15,140,000 of bonds occurred in January, 1905; suit was begun in February, 1906; a receiver was appointed in April, 1906; and the foreclosure decree was entered in February, 1907. The decree provided that the purchaser should have six months in which to elect whether or not he would adopt the Baltimore & Ohio and other leases.

In March, 1907, the Baltimore & Ohio filed its petition for leave to redeem as lessee and to be subrogated to the rights of complainant. The stockholders had knowledge of this petition, appeared in court by counsel, and (though stating orally that the lease was fraudulent and had greatly damaged the Terminal Company) agreed to the entry of an order on April 16, 1907, that the Baltimore & Ohio Company might redeem by the payment of the amount theretofore decreed, with subsequently accruing interest, and that upon such payment the company should become entitled to all the legal and equitable rights of the bondholders. The order, however, contained the following proviso:

"This order is expressly made without prejudice to the rights of the Chicago Terminal Transfer Railroad Company, or the receiver of said company, or any stockholder of said company hereafter permitted by the court so to do, to contest the validity or effect of the lease of April 1, 1903, between the Chicago Terminal Transfer Railroad Company and the Baltimore & Ohio and Chicago Railroad Company and the Baltimore & Ohio Railroad Company, as fully and freely in all respects as if this order had not been made. Nor shall the entry of this order be held at any time or in any proceedings

hereafter, as determining the validity or effect of said lease, and is expressly made without prejudice to the right of the company or the receiver of the company or the stockholders of the company to litigate all questions raised by the answer of the Chicago Terminal Transfer Railroad Company. The entry of this order shall not be held as a determination by the court as to whether said amount of money so to be paid by the said Railroad Company shall be payment or as a redemption. But no decree hereafter entered in adjudicating any controversy between the Chicago Terminal Transfer Railroad Company, its receiver or stockholders, and the Baltimore & Ohio and Chicago Railroad Company and the Baltimore & Ohio Railroad Company shall affect or impair the subrogation under this order of the said railroad companies or the one making payment hereunder to the rights of the bondholders of the Chicago Terminal Transfer Railroad Company or their or its right to collect the amount of the decree heretofore entered in this cause with interest thereon, in the same manner and with the same rights as the original bondholders would have had."

On May 16, 1907, the Baltimore & Ohio filed a petition that the foreclosure decree be amended so that the sale should be subject to their lease instead of giving the purchaser a six months right of election.

On June 24, 1907, representatives of the stockholders' protective committee filed a petition for leave to intervene for the purpose of setting forth the fraud in connection with the Baltimore & Ohio lease. This petition is not copied in the record, but is referred to in the present petition as being of the nature just stated. It was never called up for action. The excuse is given that negotiations were pending between the Baltimore & Ohio and the committee for the purchase of the stock controlled by the committee. But reference to the exhibit attached to the present petition shows that the negotiations (which were later consummated) related only to the purchase of preferred stock.

Claiming that the Baltimore & Ohio's purchase of their preferred stock was only a "partial settlement" and that the situation required or justified an abandonment of their first petition, the stockholders filed a second petition on February 3, 1909. The court entered an order on April 17, 1909, denying them leave to intervene. This petition set forth a conspiracy, alleged to have originated with Harriman and associates, to ruin the Terminal Company. The charge was that the conspirators obtained control of the management of the Terminal and Baltimore & Ohio Companies, and with great profit and advantage to themselves, caused the Terminal Company to make the lease in question to the Baltimore & Ohio at a shockingly inadequate rental; that the conspirators intended that the insolvency of the Terminal Company should result; that the Terminal Company had consequently suffered not only loss of rental but all the damages that flowed from the default and foreclosure. One paragraph from this second petition will illustrate its scope and object:

"That the Baltimore & Ohio, being party to said fraud and conspiracy immediately and directly resulting in the default on the bonds and in the foreclosure suit, which bonds are now owned by the Baltimore & Ohio, is by reason of such fraud and conspiracy not entitled to further prosecute said foreclosure proceedings in a court of equity until it has purged itself of said fraud and conspiracy and accounted and paid to the Terminal Company the damages which have been suffered by the Terminal Company as

the result of said fraud and conspiracy; that this honorable court, however, should retain jurisdiction of the subject-matter, ascertain the damages suffered by the Terminal Company, direct the payment thereof to the Terminal Company or its receiver, and permit the Terminal Company or its receiver to pay the Baltimore & Ohio the overdue interest on the bonds and reinstate the bonds and mortgage to their original position, as the result of which the Terminal Company will be again solvent, able to conduct its public functions and duties and to promptly meet the interest thereafter accruing upon its mortgage debt."

On October 27, 1909, the Baltimore & Ohio filed a motion for leave to withdraw its petition of May 16, 1907, to modify the decree, and for directions to the master to sell under the decree as it stood. This motion was granted the next day.

On October 6, 1909, the stockholders had moved for leave to file another intervening petition. The hearing of this motion was set for November 9, 1909. What the form of the proposed petition was does not appear from the record. After the Baltimore & Ohio's action of October 27, 1909, the petition was tendered in its present form, and leave to intervene was denied on January 5, 1910, by the order now on review. Outside of averments of the change in attitude of the Baltimore & Ohio on October 27, 1909, this petition, on comparison with the second, is found to be the same in substance and effect. It counts on the same fraud and conspiracy and likewise seeks to vacate the foreclosure decree, cancel the lease, wipe out the default by means of an accounting of damages, and restore the status which the Terminal Company prior to the conspiracy had enjoyed as a going concern. It admits that the stockholders were aware of the fraudulent transactions therein set forth ever since the beginning of the foreclosure proceedings in February, 1906.

[1] Applications for leave to intervene are of two kinds. In one the applicant has other means of redress open to him, and it is within the court's discretion to refuse to incumber the main case with collateral inquiries. In the other the applicant's claim of right is such that he can never obtain relief unless it be granted him on intervention in the pending cause. In this latter class the right to intervene is absolute, and the rejection of the petition is a final adjudication and therefore appealable. Credits Commutation Co. v. United States, 177 U. S. 311, 20 Sup. Ct. 636, 44 L. Ed. 782; Minot v. Mastin, 95 Fed. 734, 37 C. C. A. 234; United States v. Philips, 107 Fed. 824, 46 C. C. A. 660; In re Columbia Real Estate Co., 112 Fed. 643, 50 C. C. A. 406; Thomasson v. Guaranty Trust Co., 159 Fed. 126, 86 C. C. A. 514.

[2] Remedy for the wrong done to the Terminal Company (on whose right of action the stockholders must stand) has two aspects. A victim whose property rights have been injured by a fraud may elect to accept the situation created by the fraud and seek to recover his damages; or he may elect to repudiate the transaction and seek to be placed in statu quo. But the law should not make the victim's election for him. If he chooses to repudiate the transaction and recover his property, and if such a recovery cannot be had except by intervention in a pending suit, we think his right to intervene is not destroyed by the

fact that it was open for him to accept the situation and sue for damages.

Conceding for the purposes of this decision that the stockholders' final petition made a sufficient showing of their right to redress the injuries put upon the Terminal Company, and of the Terminal Company's right to rescission, accounting, and restoration of prior status, we are nevertheless constrained to affirm the order on account of the following considerations disclosed by the petition and the record in connection therewith.

[3] 1. Shortly after the decree was entered, the Baltimore & Ohio petitioned for leave to pay for the bonds and to be subrogated to all the rights of the complainant. The stockholders, with notice of this petition, and with full knowledge of the fraudulent transactions which would prevent the Baltimore & Ohio from availing itself of the decree and which would require a court of equity to open up the decree in the hands of the Baltimore & Ohio and compel it to account, wipe out the default, and restore the Terminal Company to a live condition, appeared in court and agreed to the order of April 16, 1907. This order, apart from the proviso, put the decree into the hands of the Baltimore & Ohio as free from assault as it was in the hands of the complainant. The proviso contains apparently conflicting statements. On the one side are the expressions that the order of subrogation was without prejudice to the right of the Terminal Company (or its stockholders if permitted to intervene in its behalf) to contest the validity or effect of the Baltimore & Ohio lease, and that the order should not be held determinative of the validity or effect of the lease or the character of the Baltimore & Ohio's payment for the bonds. On the other is the declaration that no decree thereafter entered in adjudicating any controversy between the Terminal Company (or its stockholders) and the Baltimore & Ohio should impair the subrogation of the Baltimore & Ohio to the rights of the bondholders or its right to enforce the decree "in the same manner and with the same rights as the original bondholders would have had." If the reservations in the proviso in favor of the Terminal Company and its stockholders were to be taken as authorizing a subsequent vacation of the foreclosure decree with the view of canceling the Baltimore & Ohio lease, avoiding the default on the bonds, and restoring the Terminal Company to the condition of a going concern, they would not only destroy the order itself, but would be in irreconcilable conflict with the final and explicit terms explanatory of the total effect of the order and proviso. The only way by which the various conditions of the proviso can be harmonized, and effect thereby be given to all of them and to the order itself, is by seeing that the court cut off the right of the Terminal Company and the stockholders (then before it) to attack the foreclosure decree and the right of sale thereunder, and preserved the right of the Terminal Company and the stockholders to hold the Baltimore & Ohio answerable, in any proper forum and by any proper procedure, for all the damages caused by the fraud and conspiracy to which it was a party, without the possibility of the Baltimore & Ohio's successful use of the foreclosure decree, the order

of subrogation, its payment for the bonds whether as purchaser or redemptor, and a sale in fulfillment of the foreclosure decree and subrogation order, as means of obstructing or embarrassing the controversy. Whether the demand for damages should be prosecuted by original declaration, or original bill, or through a discretionary intervention in the pending cause (and it is obvious that the keeping open of the cause for such a purpose would not affect the foreclosure decree or delay its execution), in no event was the position of the Baltimore & Ohio as owner of the decree and as successor to the complainant's right to enforce the decree to be assailed by an intervention. Such was the construction put upon the subrogation order and proviso by the circuit judge, who, finding that "the petitioners, under the guise of attacking the lease, seek to annul the decree," denied leave to intervene for such a purpose.

[4] 2. Order of subrogation was entered on April 16, 1907. On May 2d the Baltimore & Ohio acted thereon and paid complainant $16,990,631.92 for the decree. On the 16th the Baltimore & Ohio petitioned that the property be sold subject to its lease. Assuming that the subrogation order left the stockholders free to seek a vacation of the decree, a cancellation of the lease, and a restoration of the previous status, we think that equity would require prompt action. The stockholders had had knowledge of the alleged fraud for more than a year. Such an attack would cause a heavy cloud to hang over a seemingly impervious final decree and would delay an important cause that was ready to be closed and put off the docket by a sale in execution of the decree. The stockholders did begin with sufficient promptness. They filed their petition on June 27, 1907. But they took no further steps in court until February 3, 1909. They never pressed for action upon this petition and finally abandoned it. Two excuses are offered.

The first is that the Baltimore & Ohio had pending its petition that the property be sold subject to the lease. Whether the sale should be subject to the lease or subject to the purchaser's right to reject or adopt the lease was a question that did not touch the stockholders' standing as intervenors of right and not of grace. To be intervenors of right they had to stand on the impossibility of their obtaining, except by intervention, the necessary relief by a vacation of the foreclosure, a cancellation of the lease, and a restoration of the prior status. The necessity and the facts to support it were known to the stockholders, and the situation in that respect was not affected by the Baltimore & Ohio's petition to have the sale made subject to the lease.

The other excuse is that delay was justified by the Baltimore & Ohio's negotiations with them respecting the purchase of their stock. This would be good if there had been any negotiations looking to the purchase of their common stock. But the exhibit puts the fact beyond cavil that the only negotiations related to preferred stock. This was notice that the Baltimore & Ohio intended to ignore their interests as common stockholders; interests having a different origin and a different standing from their interests as preferred stockholders. When the Baltimore & Ohio purchased their preferred stock at less

than a quarter of its face value, there was not a "partial settlement," but a full settlement, of all matters in negotiation. And the agreed value put by these adversaries upon the preferred stock might possibly be taken as a mutual recognition that the common stock had nothing but a maneuvering value.

On February 3, 1909, the stockholders filed a second petition. There was no showing that any facts of fraud antedating the final decree had come to their knowledge within the three years preceding the filing of this petition. The excuses for delay on the first petition have been found to be without color. The filing of a second petition, without any change affecting the situation, without any suggestion of insufficiency or excusable omissions in the first petition, should not restore a lapsed diligence.

The order denying leave to intervene on the second petition was entered on April 17, 1909. On October 6, 1909, the stockholders asked leave to file a third intervening petition. Counsel for the stockholders do not show wherein the second petition was insufficient. Our comparison leads to the conclusion that the second states just as good a cause of action as the third for relief by vacation of the decree, cancellation of the lease, and restoration of the prior status. The only excuse offered for the additional delay on the part of the stockholders and a further attempt in the Circuit Court after the denial in April is the change of situation produced by the Baltimore & Ohio's withdrawal of its petition for a sale subject to the lease. But, as already stated, this had nothing to do with the attack on the decree. Both petitions were challenges of the right of the Baltimore & Ohio to avail itself of the decree through any kind of sale, by reason of the fraud in the lease and the conspiracy to ruin the Terminal Company, or to have any benefit from its purchase of the bonds except on an accounting for all the damages occasioned by the fraud and conspiracy. These various moves do not impress us as being the acts of a suitor in equity who is conscious that he has a substantial interest and a substantial ground for asserting that interest, and who is anxious to prosecute his substantial rights with all reasonable diligence and without unnecessarily obstructing the course of litigation of other issues to which he is not a party.

[5] 3. If the order of January 5, 1910, denying leave to intervene, is appealable, it is so because it is a final order or decree against appellants. If so, the order of April 17, 1909, denying leave to intervene, was equally a final order or decree. If, prior to April 17, 1909, the stockholders had an absolute right to intervene on the cause of action stated, they had as perfect a right to file their petition and be heard as they would have to file their original bill or declaration on any cause of action and be heard. Suppose a suitor should file an original bill, and the court should decline to hear him and should enter a final decree dismissing the bill for lack of merit on its face. Could such a suitor require the court to hear the same cause of action on a second bill which disclosed the former proceedings and adjudication? We are of opinion that the answer applies to the present case. No inadvertence or mistake, as ground for amendment of the second pe-

tition, was advanced. If there had been ground for amendment, the amendment should have been made before the final order was entered. If the ground was not known until afterwards, an application to vacate the final order or a petition for review should have been made in the Circuit Court. Without getting rid of that final order by proceedings either in the Circuit Court or on appeal, the stockholders could not thereafter compel a hearing of the same complaint. If that is not so, then appellants might also have ignored the final order of January 5, 1910, and have renewed their application as many times as they pleased.

II. The second appeal is from an order overruling appellants' motion to vacate the sale. The court fixed the minimum selling price at $15,140,000. The Baltimore & Ohio bid in the property at $16,000,-000. Appellants' motion was grounded on the Baltimore & Ohio's alleged suppression of competition in bidding, whereby the property was sold at an inadequate price. Appellants' highest valuation, an unsupported averment, is $30,000,000. As this is less than the sum of the mortgage debt, some $19,000,000 at the time of the sale, and the $17,000,000 of preferred stock, it is apparent that a resale could not benefit the common stockholders.

The orders appealed from are affirmed.