**BANKERS' TRUST CO. v. VIRGINIA RY. & POWER CO. et al.**

**O'CONNOR et al. v. SAME.**

(Circuit Court of Appeals, Fourth Circuit. May 10, 1921.)

Nos. 1878, 1879.

1. **Appeal and error** ⬧⟞78(2)—**Order refusing leave to intervene appealable.**

Where the court in a consolidated suit to foreclose mortgages against related corporations in an order of sale reserved jurisdiction to enforce claims of bondholders of one corporation against the property of another for diversion of assets should such claims be sustained, a subsequent order refusing leave to certain of such bondholders to intervene to assert such claims *held* in effect a final adjudication of their rights, and appealable.

2. **Equity** ⬧⟞114—**Right to come into suit brought by representative of class held not barred by laches.**

Where one bondholder of a corporation filed a petition in a foreclosure suit for the benefit of himself and all others similarly situated who would come in and share the costs of the proceeding, asserting a claim against another corporation for diversion of assets of the mortgagor, a delay of 10 years by other bondholders similarly situated before coming in, during which time the claim was being actively litigated by the petitioner, *held* not laches, which barred their rights against the adverse party; the petitioner making no objection.

Appeals from the District Court of the United States for the Eastern District of Virginia, at Richmond.

Suits in equity by the Metropolitan Trust Company and others against the Virginia Passenger & Power Company and others. From orders denying them leave to intervene, the Bankers' Trust Company, Executor, and Thomas O'Connor and others, separately appeal. Reversed.

For opinion below, see 271 Fed. 38.

James Mann, of Norfolk, Va. (Wm. Hodges Mann, of Petersburg, Va., Charles C. Deming, of New York City, Wm. Hodges Mann & Son, of Petersburg, Va., and Mann & Tyler, of Norfolk, Va., on the brief), for appellants.

Henry W. Anderson and Thomas B. Gay, both of Richmond, Va. (Munford, Hunton, Williams & Anderson, on the brief), for appellees.

Before KNAPP and WOODS, Circuit Judges, and ROSE, District Judge.

WOODS, Circuit Judge. An outline of the complex litigation concerning the light and power companies of the city of Richmond and vicinity is given in a former appeal. 229 Fed. 633, 144 C. C. A. 43. A short statement will suffice to make clear the issue made by the petitions now presented.

A consolidated suit was brought in the District Court, looking to the foreclosure of mortgages on a number of light and power companies in the city of Richmond and vicinity, among them the Virginia Passenger & Power Company and the Richmond Passenger & Power Company. One of the consolidated suits for foreclosure was that of the Metropolitan Trust Company, trustee of a mortgage securing $1,000,000 bonds of the Richmond Company, known as debenture bonds. In the litigation the Metropolitan Trust Company alleged that the Virginia Company, by purchase of the stock of the Richmond Company, had secured complete control and management of that corporation, and had diverted assets of the Richmond Company for the benefit of the Virginia Company, thus unlawfully decreasing the security of the holders of the debenture bonds and increasing the value of the property under the mortgages of the Virginia Company. The Metropolitan Trust Company insisted that the foreclosure sale should not be made until the rights under this allegation had been ascertained. The court ordered the sale, preserving the rights of the Trust Company and of the debenture bondholders by this provision of the decree:

"The court reserves the right to hereafter determine all questions in connection with the diversion of earnings, business, property, and income to the Virginia Passenger & Power Company from the Richmond Passenger & Power Company, as set forth in the pleadings herein and the reports of the special master, and to enforce against the property purchased and the earnings and income thereof in favor of the said Metropolitan Trust Company of the City of New York, as trustee, and the petitioners, Howe and others, and the debenture bondholders, any lien or claim to which the said trustee or bondholders shall be entitled, and to afford such trustee on bondholders and petitioners such other and further relief as to such alleged diversion with respect to such purchaser, his successors and assigns, and the property pur-

chased, as the court shall determine to be just and equitable, the intent being that the rights of the Metropolitan Trust Company of the City of New York, as trustee, and the debenture bondholders and of the petitioners, Howe and others, to establish any claim they may have for diversion of earnings, property, business and income of the Richmond Passenger & Power Company by the Virginia Passenger & Power Company, or the receivers herein, and to enforce against the property purchased any claim or lien, legal or equitable, to which they may be entitled, and to apply any money or property recovered to the benefit of the debenture bondholders, in all respects as if this decree had not been made."

This decree was affirmed on appeal. 168 Fed. 1021, 93 C. C. A. 671. After the sale the Metropolitan Trust Company refused to press the claim of diversion of the assets of the Richmond Company, giving as a reason lack of support and indemnity from the bondholders.

On March 10, 1910, Charles Hall Davis, as holder of 71 of the debentures, declining to accept as equitable the provision made for the debenture bondholders of the Richmond Company in the reorganization under the sale, filed his petition, "for the benefit of himself and all others similarly situated who will come in and share the costs of this proceeding," making the same allegations as the Metropolitan Trust Company had made as to the diversion of the property of the Richmond Company to the Virginia Company. The District Court dismissed the petition.

This court reversed the decree, holding that if, as alleged, the executive officers of the two companies so managed that a part of the Richmond Company's street railway or any other tangible property or the good will attached to it was turned over to the Virginia Company and fell under the mortgages of that company, thus increasing their security, the mortgagees of the Virginia Company, upon enforcing their security, would be liable to account to the mortgagees of the Richmond Company for the amount they realized, or should have realized, from the converted property as an increment to their security taken from the security of the mortgagees of the Richmond Company. It was further held that Davis, as the diligent creditor, filing and prosecuting his petition to recover the diverted assets, would be entitled to preference over the holders of other securities of the Richmond Company. As no other bondholder had appeared in the proceeding instituted by Davis, this court assumed that all others had accepted the settlement proposed in the reorganization. However, this assumption, of course, did not affect the rights of bondholders, who had not in fact accepted it.

The cause was remanded to the end that the value of the property, if any, including the attached good will, diverted from the Richmond Company to the Virginia Company or the receivers, which was subject to the mortgage securing the debenture bonds, might be ascertained. After the cause was thus remanded an order was made by the District Court, directing Hon. A. L. Holladay, as special master, to take testimony and report upon the alleged diversion of the assets of the Richmond Company. On April 17, 1920, the master made a report in which he found that assets of the Richmond Company, subject to the debenture bonds had been diverted for the benefit of the Virginia Company of the value of $278,420.91, which, with interest to January 1,

1920, amounted to $412,436.19. The exceptions to this report have not yet been passed on by the District Court.

On May 15, 1920, after the report was filed, Thomas O'Connor, A. A. Roberts, Edwin Langdon, Annie H. Spencer, Alvin Beveridge, George E. Fisher in his own right and as executor of G. W. Fisher, and Bankers' Trust Company as executor of Charles L. Jacobus, moved in the District Court to file their petitions of intervention in that court. The petitions which they asked to file set forth the proceedings in the court relating to the litigation of Davis, including the report of the master on the diversion of the assets of the Richmond Company. The petitions allege this report to be incomplete and claim that other diversions of the assets of the Richmond Company are yet to be reported on, if necessary to meet their claims.

As to their own status, the petitioners allege that of the debenture bonds of the Richmond Company secured by the mortgage to the Metropolitan Trust Company there are outstanding 168, besides the 71 claimed by Davis, of which the 'petitioners own 161, of the face value of $161,000 and interest, and that they did not assent to or participate in the plan of organization. In short, the allegations of the petitioners is that their claims are in precisely the same position as that of Charles Hall Davis, except that he filed his petition on March 12, 1910, and has persisted in asserting his claim from that time, while these petitioners have stood by, without giving any intimation of an intention to intervene or otherwise assert their claims, until after the above-recited report of the master was filed. They allege contribution to the expenses of the Davis litigation, and willingness to make further contribution in their just proportion to expenses hereafter incurred by him, and willingness to allow his claim and counsel fees to be first paid from the value of the assets, if any, found by the court to have been diverted from the Richmond Company and an agreement with Davis to that effect.

The District Court refused to allow the petitions to be filed, holding that the petitioners were barred by laches in having delayed their application for intervention from March 12, 1910, when Davis instituted his proceeding, until May 15, 1920, more than 10 years.

[1] We consider first the motion to dismiss, made on the ground that the order refusing to allow the petition to be filed is not appealable, because the petitioners are not parties to the proceedings, and therefore have no status in the cause. The general rule is well recognized that one not a party to a suit or proceeding has no right to appeal from a decree or order made therein. Ex parte Cutting, 94 U. S. 14, 24 L. Ed. 49; Ex parte Cockcroft, 104 U. S. 578, 26 L. Ed. 856; Ex parte Leaf Tobacco Board, 222 U. S. 578, 32 Sup. Ct. 833, 56 L. Ed. 323.

In the matter before us there can be no dispute that, if the petitioners have any rights to the security of the property which it is alleged was wrongfully taken from the Richmond Company, their mortgagor, they can assert them nowhere except in the District Court for the Eastern District of Virginia, which assumed jurisdiction, sold the property, and in its decrees provided for the assertion and litigation of the rights

of holders of the bonds of the Richmond Company. The denial of their motion to file their petitions was therefore in effect a final adjudication that they had no claim against the property of which that court retained control, in order that their rights and the rights of those in like situation might be finally adjudicated. If this door is closed, there is no other they can enter. In such condition the refusal of the motion to file the petitions is in substance plainly a final adjudication of the rights of the petitioners, and therefore appealable. Credits Co. v. U. S., 177 U. S. 311, 20 Sup. Ct. 636, 44 L. Ed. 782; Ex parte Slater, 246 U. S. 134, 38 Sup. Ct. 265, 62 L. Ed. 621; U. S. Trust Co. v. Chicago Terminal Co., 188 Fed. 292, 110 C. C. A. 270. The same principle was applied by this court to the refusal to allow a supplemental bill to be filed. Rosemary Mfg. Co. v. Halifax Cotton Mills (C. C. A.) 266 Fed. 363. The distinction contended for, between the denial of a motion to file a petition and refusal to consider or grant the petition after it is filed, is too artificial and tenuous for judicial recognition.

[2] On the merits, we agree with counsel for appellees that the sole question now before the court is whether the District Court was right in holding that the allegations of the petitions showed such laches as would prevent the petitioners from coming into the Davis proceeding and setting up their claims to the assets alleged to have been diverted from the Richmond Company. If the petitions were the beginning of an independent proceeding to enforce the claim of the petitioners we would have no hesitation in holding, in the circumstances, that the failure to act until after the expiration of 10 years would be imputed to the petitioners as a declaration that they would not act at all, and that they would be barred by laches. The rule that mere long delay, not satisfactorily explained, either in commencing a suit, in seeking intervention, or in prosecuting a suit or proceeding, will constitute such laches as to bar the right asserted, is too well established for discussion. Abraham v. Ordway, 158 U. S. 416, 15 Sup. Ct. 894, 39 L. Ed. 1036; New York v. Pine, 185 U. S. 93, 22 Sup. Ct. 592, 46 L. Ed. 820; Sullivan v. Portland & K. R. Co., 94 U. S. 806, 24 L. Ed. 324; Brown v. County of Buena Vista, 95 U. S. 157, 24 L. Ed. 422. Where there has been such long delay—

"the party who makes such appeal should set forth in his bill specifically what were the impediments to an earlier prosecution of his claim, how he came to be so long ignorant of his rights and the means used by the respondent to fraudulently keep him in ignorance, and how and when he first came to a knowledge of the matters alleged in his bill; otherwise, the chancellor may justly refuse to consider his case, on his own showing, without inquiring whether there is a demurrer or formal plea of the statute of limitations contained in the answer." Badger v. Badger, 2 Wall. 87, 95 (17 L. Ed. 836).

The reasons alleged by the petitioners for not entering the proceeding and asserting their demands before are: (1) That Charles Hall Davis in terms instituted his proceeding for the benefit of himself and others similarly situated who would come in and share the costs of this proceeding; (2) that they are similarly situated in that they hold bonds of precisely the same nature as those set up by Davis, and have come in under those terms and are sharing the expense of the proceed-

ing; (3) that the question of the alleged diversion of the property securing the bonds now set up had been actively litigated since the filing of the bill of the Metropolitan Trust Company; (4) that it was well known to all persons interested that the bonds held by petitioners were outstanding, that the property was sold and purchased subject to the rights of holders of the debenture bonds of the Richmond Company, that for any diversion of the assets of the Richmond Company the purchaser would be responsible to the holders of the outstanding bonds, and that Davis had been all the time asserting this diversion for the benefit of himself and all others similarly situated who would come in and share the costs of his proceeding.

The argument against the sufficiency of these reasons is strong, but we are bound by the decision of the Supreme Court holding in express language that the reasons given are sufficient against the plea of laches for delay.

"Where the cause of action is of such a nature that a suit to enforce it would be brought on behalf, not only of the plaintiff, but of all persons similarly situated, it is not essential that each such person should intervene in the suit brought in order that he be deemed thereafter free from the laches which bars those who sleep on their rights. Cox v. Stokes, 156 N. Y. 491, 511." Southern Pacific Co. v. Bogert, 250 U. S. 483, 489, 39 Sup. Ct. 533, 536 (63 L. Ed. 1099).

In Cox v. Stokes, 156 N. Y. 491, 511, 51 N. E. 316, 322, the court used this language:

"Knowing that their proceedings were thus attacked, Stokes, the committee, and the United Lines Telegraph Company continued, in defiance of the reorganization agreement, to carry on their scheme, as embodied in the modified agreement. Under these circumstances, no one could have been misled, simply because the plaintiffs waited to see whether relief would come through the pending litigation, or whether the sale would be confirmed, before commencing their action. The defendants proceeded at their peril, because they had full notice that some of the bondholders at least had not acquiesced in their unlawful acts, but were active in the assertion of their rights. We repeat, as applicable to this case, so far as the question of laches is concerned, the language of the court in Boardman v. Railway Company, 84 N. Y. 157, 183: 'It appears that there has been, ever since the expiration of the time when the dividends were due, an active and continuous litigation, and a sharp controversy in the courts with other parties against the old corporation and the defendant, by stockholders who are similarly situated with the plaintiffs, to recover dividends upon the preferred stock. * * * The defendant necessarily was acquainted with the character of the litigation, with the questions involved and the claim of the preferred stockholders to the dividends; and in the face of these facts, with full notice of the nature of the claim, has no ground for insisting that it would have acted otherwise if the plaintiffs had sued at an early date. It was not required that each particular stockholder should sue for his share of the dividends to preclude the defendant from claiming an acquiescence and estoppel; and it is quite sufficient that it was advised of the character of the claim of the respective stockholders. The plaintiffs and other stockholders were entirely justified in awaiting the result of suits pending without incurring the hazard of losing their rights on account of the lateness of their demand.' So the plaintiffs in this action, under all the circumstances, were not obliged to sue more promptly in order to save their rights."

On the authority of the Supreme Court we must hold that the District Court erred in refusing to allow the petitions to be filed. This

conclusion, of course, does not preclude the appellee from setting up any special facts tending to show waiver or estoppel, not covered by the above-cited decision of the Supreme Court as we have applied it.

Nor does it warrant the petitioners, as holders of the debenture bonds, in bringing into the cause any new matter excluded by the refusal to allow the amendment to Davis's petition, proposed by him on January 17, 1914. Davis v. Virginia Ry. & Power Co., 229 Fed. 633, 639, 144 C. C. A. 43. All we decide is that the delay of the petitioners to join in the proceedings instituted by Davis, for the benefit of himself and all others similarly situated who would come in and share the cost of the proceeding, does not constitute such laches as to deprive the petitioners of the results of the litigation instituted by Davis, and that, therefore, they are entitled to file their petitions and to be allowed to intervene.

Reversed.