**SCHMELZ LIQUIDATING CORPORATION v. WILLIAMS (two cases).**

**Nos. 4034, 4039.**

Circuit Court of Appeals, Fourth Circuit.

Oct. 6, 1936.

F. H. Skinner, of Newport News, Va. (John Marshall and Skinner & Marshall, all of Newport News, Va., on the brief), for appellant.

S. R. Buxton, of Newport News, Va., for appellee.

Before PARKER and SOPER, Circuit Judges, and CHESNUT, District Judge.

CHESNUT; District Judge.

The question presented by this appeal in bankruptcy is whether the District Court rightly overruled the motion of a creditor of the bankrupt to dismiss without hearing the latter's application for discharge on the ground of long delay in its prosecution after it had been duly filed within the statutory time allowed.

The facts of the case, which are not in controversy, are contained in a brief stipulation and in the opinion of the District Judge. It appears therefrom the petition in bankruptcy was filed January 31, 1921, and the bankrupt's application for discharge was filed with the clerk of the court on November 8, 1921, but, the required costs for notices to creditors of the application for discharge not having been paid at the time, the notice to creditors for a hearing on the application was not issued until January 14, 1935, after the required costs had been paid to the clerk. In the meantime the bankrupt estate had been regularly and duly administered and closed. The bankrupt promptly surrendered all his property to the trustee; it was converted into cash and distributed to the creditors including the original holder of the claim now held by the Schmelz Liquidating Corporation, which was the only objector to the bankrupt's discharge, and is the appellant here. After overruling the petition to dismiss the application for discharge, the District Court granted the discharge, there being no specifications of objection thereto interposed by any creditor. While the appeal is taken from the granted discharge, the only error assigned by the appellant is with respect to the overruling of his petition for dismissal of the bankrupt's application for discharge. It is the long delay in the prosecution of the proceedings for discharge which alone constitutes the basis of the appellant's objection thereto.

On the facts submitted the trial judge found by inference that the very unusual delay on the part of the bankrupt in prosecuting his application for discharge was due to a mistake or misunderstanding occasioned by the absence at the time of any rule of court definitely prescribing the practice and procedure in prosecuting applications for discharge, including requirement as to advance payment of costs for notices. It appears that, in the absence of any rule upon the subject, the practice of the clerk was not to present to the judge of the court

an order for notice to creditors until the costs therefor had first been paid by the bankrupt; and, until a rule was adopted in 1928 requiring the costs to be paid to the clerk before the application for discharge was permitted to be filed, numerous applications for discharge in bankruptcy were allowed to lie in the clerk's office without action for many years before the costs were advanced and the notice to creditors issued. It further appears in the opinion of the trial judge, who was of course familiar with the rules and practice of his court, that the rule adopted in 1928 was not intended to be retroactive, and numerous pending applications for discharge with costs still unpaid were not affected thereby, and continued from time to time to be acted on thereafter after the payment of the costs. But to cure this condition the court on July 5, 1934 adopted a rule to the effect that all previously filed applications for discharge in bankruptcy in which the costs had not been paid would be dismissed unless they were paid prior to September 10, 1934, provided notice was duly given by the clerk by mail to all such bankrupts. The District Judge however considered it inequitable to apply the latter rule to the bankrupt in this case as it was stipulated that he had not received notice of the order.

It further appears that the appellant has succeeded by mesne assignments to the claim of an original creditor of the bankrupt who, a few days before the filing of the petition in bankruptcy, obtained a judgment against the bankrupt which, except for the subsequent adjudication, would have constituted a lien on certain real estate held by the bankrupt and which was by him surrendered to his trustee, sold, and the proceeds with other realized assets, distributed to all the creditors including the appellant's remote assignor as an unsecured creditor. Subsequent to the bankruptcy this real property was conveyed by its purchaser from the trustee in bankruptcy to and through the bankrupt to his wife by whom it was mortgaged to a savings association for $2,700. At no time since then and until the filing of the petition to dismiss the bankrupt's application for discharge had the original judgment creditor or its successive assignees, taken any proceeding to subject the property to the recorded judgment; nor was any application made to the court during said time to dismiss the bankrupt's pending application

for discharge, the existence of which on the court docket must have been readily apparent to any interested creditor.

There is nothing in the case from which could properly be inferred the existence of any statutory grounds for denying the discharge contained in section 14 of the Bankruptcy Act as amended May 27, 1926, § 6 (11 U.S.C.A. § 32). Delay in the prosecution of the bankrupt's application for discharge is not one of the causes for refusal thereof there assigned; but the appellant here contends that the prolonged delay of itself requires a dismissal of the bankrupt's application, on the general equitable principles applicable to the administration of the Bankruptcy Act (11 U.S. C.A.). The precise question thus presented is whether prolonged delay in the prosecution of the application, without intervening change in the situation of the parties adversely affecting the appellant, was of itself sufficient to require the trial judge to refuse to hear the application and in effect to deny the discharge.

The equitable doctrine of laches is clearly stated in 1 Pomeroy's Equitable Remedies, § 21.

"Laches, in legal significance, is not mere delay, but delay which works a disadvantage to another. So long as parties are in the same condition, it matters little whether one presses a right promptly or slowly, within limits allowed by law, but when, knowing his rights, he takes no step to enforce them until the condition of the other party has, in good faith, become so changed that he cannot be restored to his former state, if the right be then enforced, delay becomes inequitable, and operates as estoppel against the assertion of the right. The disadvantage may come from loss of evidence, change of title, intervention of equities, and other causes; but when a court sees negligence on one side and injury therefrom on the other it is a ground of denial of relief."

In Galliher v. Cadwell, 145 U.S. 368, 373, 12 S.Ct. 873, 875, 36 L.Ed. 738, it was said:

"But it is unnecessary to multiply cases. They all proceed upon the theory that laches is not, like limitation, a mere matter of time; but principally a question of the inequity of permitting the claim to be enforced,—an inequity founded upon some change in the condition or relations of the property or the parties."

And the doctrine is similarly stated in Penn Mutual Life Ins. Co. v. Austin, 168 U.S. 685, 697, 18 S.Ct. 223, 228, 42 L. Ed. 626; Ward v. Sherman, 192 U.S. 168, 176, 24 S.Ct. 227, 230, 48 L.Ed. 391; Southern Pacific Co. v. Bogert, 250 U.S. 483, 488, 39 S.Ct. 533, 535, 63 L.Ed. 1099 (where a delay of twenty-two years was held not fatal under the circumstances); 10 R.C.L. § 143, p. 399; 21 C.J. pp. 210, 219; Lawrence Eq. Jur. vol. 2, § 1037; and Hughes, Fed. Practice, § 4201.

Closely related to, but strictly considered distinct from, laches proper is the equitable principle with regard to stale demands, or belated claims, under which long delay in the institution or prosecution of asserted rights, will, *when unexplained,* sometimes debar relief, on the assumption that the delay indicates intentional abandonment of the claim. This equitable doctrine was well expressed in Abraham v. Ordway, 158 U.S. 416, 420, 15 S.Ct. 894, 895, 39 L.Ed. 1036, as follows:

"But it is now well settled that, independently of any limitation prescribed for the guidance of courts of law, equity may, in the exercise of its own inherent powers, refuse relief where it is sought after undue and unexplained delay, and when injustice would be done, in the particular case, by granting the relief asked. It will, in such cases, decline to extricate the plaintiff from the position in which he has inexcusably placed himself, and leave him to such remedies as he may have in a court of law."

See also to the same effect the opinion of Judge Woods, speaking for this court, in Bankers' Trust Co. v. Virginia Ry. & Power Co., 273 F. 999, 1003, where, however, a delay of ten years by intervening claimants was held not fatal under the circumstances.

These well established equitable principles have been applied in analogous cases where creditors in bankruptcy have opposed the discharge on the ground of delay in prosecution of the bankrupt's application. Each case depends upon its own particular facts and circumstances, but generally it may be said that where the delay is not accompanied by a change in the situation of the parties adversely affecting the objecting creditor, and is satisfactorily explained, the discharge has been granted. In re Cage Cotton Co., 32 F.(2d) 533 (D.C.Tex.) affirmed Hagler v. Cage

(C.C.A.) 35 F.(2d) 1017; Mazur v. Hirsch Shoe Co., 46 F.(2d) 973 (C.C.A.5); In re Reisler, 278 F. 618 (C.C.A.2), reversing (D.C.) 275 F. 65; Bank of Elberton v. Swift, 275 F. 834 (C.C.A.5); In re Neal, 270 F. 289 (D.C.N.D.Ga.); In re Glasberg, 197 F. 896 (C.C.A.2); In re Whittaker, 57 F.(2d) 345 (D.C.Mont.); In re Edwards, 4 F.(2d) 148 (D.C.Tenn.); In re Wolff, 132 F. 396 (D.C.Cal.). Conversely where the delay has resulted in prejudice to the objecting creditor by reason of inability to produce evidence in opposition to the discharge or similar disadvantage, it has been held that the delay justified a refusal of the discharge. Lindeke v. Converse, 198 F. 618 (C.C.A.8), is probably the leading authority for refusal of discharge on the ground of delay coupled with intervening disadvantage. But there the application was not filed within the year from adjudication but erroneously permitted by the trial judge to be filed within six months thereafter for inadequate cause, and the delay of over four years in the prosecution of the application had resulted in serious prejudice to creditors in the disappearance of evidence in support of very substantial grounds for opposing the discharge. No similar situation is here presented. The delay in prosecution was indeed unusual but after full consideration was deemed excusable by the trial judge for the reasons explained in a carefully considered opinion. As found by him it was due to a misunderstanding caused by the absence of any definite rule of court regulating the procedure in the prosecution of the application for the discharge. Nor, when we consider the importance to the bankrupt of the right to the discharge conferred by the statute, and the total absence in this case of any existing original objection thereto, is it reasonable to infer from the delay that the bankrupt intended to abandon his right to a discharge.

The appellant contends that, as the costs were not paid by the bankrupt when his application was filed it must be treated as not having been filed until long after when the payment was finally made, and therefore too late under the statute which allows only twelve months after the adjudication. This view is not tenable. The application was endorsed by the clerk and treated as duly filed in accordance with the then prevailing practice of the court. There is nothing in the Bankruptcy Act itself which requires the prepayment of such costs; nor in the General Orders of the Supreme Court, with the exception that General Order No. 10 (11 U.S.C.A. following section 53) provides that the clerk or referee *may* require the payment before incurring the expense. The brief record in this case does not show whether the clerk called to the attention of the bankrupt his requirement of practice for prepayment of these costs or whether the bankrupt or his attorney otherwise knew they were required to be prepaid. Nor was there any rule of court at that time to affect the bankrupt with such notice. In these circumstances the District Judge not unreasonably inferred the failure of the bankrupt to pay the costs and further actively prosecute his application was due to excusable mistake or misunderstanding and not to wilful neglect.

It is also urged by the appellant that nevertheless the delay (nearly fourteen years) was so extreme that it was an abuse of discretion for the trial judge to hear the application at all. But we cannot adopt that view of this case. The judge was dealing with a very unusual situation, and one that cannot likely arise in the future as the rule of the court now in force definitely provides that applications for discharge may not be physically received by the clerk until the indemnity costs are paid, and when so paid, and the referee makes a report of no known objections, the customary notice to creditors issues and the hearing date is set without further initiative of the bankrupt or his attorney.

Of course we are not to be understood as generally approving or condoning such great delay in the prosecution of bankruptcy proceedings as occurred in this instant case. If there were in the record any evidence of wilful or intentional neglect by the bankrupt, or any evidence of prejudice to creditors, the delay would have been fatal. But in applying the purely equitable doctrine of laches it is permissible to consider the relative consequences to the parties of the action insisted upon by the appellant. To have dismissed the application unheard would have forever prevented the bankrupt from obtaining his discharge to which there has never been any valid objection, and confer upon the appellant a purely fortuitous advantage, despite its own apparent acquiescence in the delay. See In re Neal (D.C.) 270 F. 289; In re Edwards (D.C.) 4 F.(2d) 148; In re Silverman, 157 F. 675 (C.C.A.2); Col-

lier on Bankruptcy (13th Ed.) vol. 1, p. 488.

Two appeals were taken in this case, one (No. 4039) under section 24b of the Bankruptcy Act (11 U.S.C.A. § 47 (b), and the other (No. 4034) under section 25a (11 U.S.C.A. § 48 (a). The latter was proper as the judgment appealed from granted a discharge in bankruptcy, and in that case the judgment will be affirmed, and the appeal in the former case will be dismissed.

No. 4034 Order Affirmed.

No. 4039 Appeal Dismissed.