**In re STILWELL.**

**No. 16461.**

District Court, W. D. New York.

Aug. 4, 1942.

See, also, 34 F.Supp. 457.

Harry M. Young, of Mayville, N. Y., for bankrupt.

Falk, Phillips, Twelvetrees & Falk, of Buffalo, N. Y., for objecting creditors.

KNIGHT, District Judge.

Ralph A. Stilwell was adjudicated a bankrupt November 10, 1930. Notice of a first meeting was sent to all creditors and on the return date none appeared, and no trustee was appointed. On March 24, 1931, a petition for discharge was filed with the Referee in bankruptcy, and on the same date the Referee sent a statement covering expenses of the proceeding, including the cost of mailing notices on discharge to the attorney for the bankrupt. Thereafter an order to show cause why the discharge should not be granted, returnable May 18, 1931, was granted but was never sent to the creditors nor published. No further proceedings in the matter of the application for discharge were taken until July 10, 1931, when the Referee on his own motion granted an order to show cause why the order to show cause on discharge should not be returned to the Clerk of the District Court for failure to prosecute. This order of the Referee was returnable July 17, 1931, and proof of service by mail of the same upon both the attorney for the bank-

rupt and the bankrupt himself are found in the Referee's file. On the return date of this order, there was no appearance by the bankrupt or his attorney, and the Referee granted an order remanding the proceeding for discharge to the Clerk of the District Court with the recommendation that the matter be withheld until the disbursements were paid. In 1933, the bankrupt left the State of New York without notice and settled in the city of Zanesville, Ohio, under a different name and appears to have prospered financially. On or about July 12, 1940, bankrupt discovered that no discharge had ever been granted and promptly paid the disbursements and the discharge was granted July 13, 1940, before it was discovered that no notice of hearing on discharge had ever been sent to creditors. Thereafter this court granted an order to show cause why the discharge should not be vacated and set aside, and thereafter an order was granted setting aside and vacating the discharge, because no notice of final hearing had ever been sent to creditors and further dismissing the application for discharge on the ground of laches due to the long delay. An appeal was taken from this order, and the Circuit Court of Appeals affirmed that portion of it which set aside the discharge previously granted for failure to notify creditors and reversed that portion which dismissed the proceeding for discharge on the ground of laches and remanded "with directions to receive evidence either of prejudice to the creditors or of a deliberate determination by Stilwell to forsake the proceedings." 2 Cir., 120 F.2d 194, 195. Specifications of objections were filed by certain creditors and evidence in the form of three depositions, one of the bankrupt, one of an attorney associated with the attorney for the bankrupt and claimed to have been in charge of the proceedings, and one of an assignee of one of the creditors, have been submitted. Nothing has been submitted showing that creditors of the bankrupt have been prejudiced by delay in granting discharge within the meaning of that term as defined by the decisions in this regard. The Bank of Ripley, original owner of the note, now in the hands of its assignee, one Norment, had written the note off as worthless. The bank was not and could not have been prejudiced by the delay. The position of the assignee is that of the bank as though no assignment had ever been made, and it is not improved by proof that at the time of taking the assignment the assignee was influenced by his discovery of the fact that no discharge had ever been granted. Mere delay in pursuing an application for discharge does not operate to the prejudice of the creditors. Schmelz Liquidating Corp. v. Williams, 4 Cir., 86 F.2d 167; In re Stilwell, 2 Cir., 120 F.2d 194. There is some evidence that the bankrupt had several tort actions pending or about to be commenced at the time of the bankruptcy. That no value was attached to these by creditors at the time the schedules were filed is indicated by the fact that no creditor appeared to examine the bankrupt nor was there any interest in the nomination of a trustee and from the further fact that after his examination of the bankrupt the Referee did not see fit to appoint a trustee. One of the objections to the discharge is the failure of the bankrupt to produce books of account. The bankrupt testified by deposition that he was a farmer and kept no formal books of account. In view of the fact that the bankrupt was engaged in farming on a moderate basis, it was not unusual for him not to keep regular books, and his failure so to do can not now be held to be prejudicial to creditors, particularly in view of the fact that the record discloses no attempt by the creditors to ascertain this fact by examination of the bankrupt at the first meeting of creditors.

In re Reisler, D.C., 275 F. 65, after reviewing the cases then decided on the question whether a bankrupt may be deprived of a discharge by neglect to present his petition for a hearing, concluded that unless a valid excuse for the delay was proved the proceeding must be dismissed. Upon appeal the decision was reversed on the ground that the excuses offered by the bankrupt were valid and sufficient to explain the delay. It must be concluded that where there is a long delay in prosecution of the application unexplained, the discharge should be denied. The cases of Schmelz Liquidating Corp. v. Williams, supra, and In re Stilwell, supra, are authority for the proposition that where a long delay in prosecution for the application for discharge is due to wilful neglect the discharge should be denied. In the Schmelz case the court in speaking on this point says [86 F.2d 170]: "If there were in the record any evidence of wilful or intentional neglect by the bankrupt, or any evidence of prejudice to creditors, the delay would have been fatal." Here no suffi-

536

cient excuse for the delay has been proved, and there is evidence of wilful neglect on the part of Stilwell in the matter of prosecuting his application for discharge. On a motion before this court August 19, 1940, made by certain creditors to have the discharge set aside, the bankrupt submitted an affidavit sworn to August 16, 1940, wherein he states: "that deponent's delay in payment of said fees and costs was not due to any wilful neglect on his part·and if he had known that said bankruptcy proceeding had not been closed and his discharge entered he would have paid the fees and costs hereinbefore mentioned and performed the acts necessary for the procurement of his final discharge at the time when it was proper." There was no claim at that time that the fees were in fact paid by him to his attorney to be advanced to the Referee and this is at variance with his present claim that he paid the money to one Joseph Lazaroni, an associate in the office of his attorney and that this payment was in response to a statement for the same sent by the Referee to the attorney and in turn advanced by mail to him. (see page 11 bankrupt's deposition) The testimony of Lazaroni shows that any work done by him in the office was under the supervision of his employer; that when money was paid in the office by clients a pencil notation was made and when the money was deposited an entry was made by the stenographer showing the same and the purpose for which the money was to be paid out; that it was customary to make all disbursements of any size by check and that all checks for disbursements out of office accounts were made by Mr. Young. Bankrupt's attorney, Mr. Young, admits the records of his office fail to disclose the receipt of the money from Stilwell. Lazaroni is not definite in his testimony on the question whether or not he received the funds for the „purpose claimed but he says that he received moneys in the office from time to time and that if he did receive any a notation was made, and the money deposited. Bankrupt testified that within a few days after payment of the money to Lazaroni he inquired of the latter whether or not the money had been turned over to the Referee and the discharge granted and was assured that it had been granted. According to his own testimony this all took place at the time when he received the statement for costs sent by the Referee March 24, 1931. Yet the uncontroverted evidence is that in July, 1931, an order to show cause why the pro-

ceeding should not be remanded to the Clerk of the District Court for failure to pay the necessary court expenses was served upon the bankrupt. There is no explanation why no action was taken upon receipt of this order to show cause and regardless of the truth or falsity of the testimony with reference to payment of the fees to the attorney it must be concluded that the failure of the bankrupt to take action when he received the order to show cause in July is evidence of wilful neglect. Again, the bankrupt testifies that he received notice from the Referee of a final hearing prior to discharge, that he attended this hearing before the Referee and testified. The records of the Referee show that no notice was ever sent to any one nor was any hearing conducted.

It must, therefore, be concluded that the bankrupt had notice in July, 1931, that the disbursements had not been paid to the Referee and that the discharge was being withheld pending such payment and his subsequent failure to make payment for a period of nine years can only be construed as wilful neglect.